**Dwight E. LEE and Leslie E. Lee, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 97–4308.

United States Court of Appeals, Second Circuit.

Argued Aug. 13, 1998.

Decided Aug. 25, 1998.

Thomas R. Moore, New York City, for petitioners-appellants.

Donald B. Tobin, Tax Division, United States Department of Justice, Washington, DC, for respondent-appellee (Loretta C. Argrett, Assistant Attorney General; Kenneth L. Greene, on the brief).

BEFORE: CALABRESI, CABRANES, and STRAUB, Circuit Judges.

CALABRESI, Circuit Judge:

Petitioners claim that their payment of certain interest expenses entitles them to income tax deductions. The United States Tax Court (Howard A. Dawson, Jr., *J.*) disallowed the deductions and sustained the Commissioner's claim of a deficiency in petition-

ers' tax payments. We affirm the decision of the Tax Court as to the issues that were before it. We remand the case to the Tax Court for the limited purpose of altering the amount of the petitioners' deficiency, as agreed to by the Commissioner.

## BACKGROUND

The deductions at issue in this case arise out of an illegitimate tax shelter that has been the subject of previous tax litigation. *See Seykota v. Commissioner*, T.C. Memo. 1991–234, 61 T.C.M. (CCH) 2706, 1991 WL 86320, supplemented by T.C. Memo. 1991–541, 62 T.C.M. (CCH) 1116, 1991 WL 218596 (1991). The parties agree that the transactions giving rise to the current litigation are factually the same as those in *Seykota.* In brief, the substance of those transactions is as follows:

An "investor" seeking to participate in the tax shelter would borrow a sum of money and use it to buy gold. He would simultaneously enter into a futures contract to sell the gold at a specified later time for a slightly higher price. The price difference was to reflect the costs to the investor of acquiring and holding the gold, including the costs of storage, insurance, and, most importantly, interest on the initial loan. Thus, in real terms, the contract tried to guarantee that the investor would recoup exactly what he paid for the gold, neither more nor less. In the year that the investor borrowed the money, he would deduct the cost of interest and the other "carrying charges." Those deductions were used to offset ordinary income from other sources. Later, when he sold the gold, the investor would report his profit as a capital gain. Between the deferral of income afforded by the deductions for interest and the lower rates of taxation applicable to capital gains, the investor could thus convert tax liabilities at rates of up to 70% payable in a given year to tax liabilities at rates as low as 28% payable in some later year.

The shelter was operated by an entity called Futures Trading, Inc. ("FTI"). Petitioner Dwight Lee was a partner in a group called Peng Partners, which participated in FTI's shelter. The issue before us is whether that participation entitles petitioners to

the investment interest expense deductions they claimed.

## DISCUSSION

■ Petitioners' interest expenses derive from economically empty transactions for which interest expense deductions are not allowed. *See Knetsch v. United States,* 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960) (disallowing interest deductions where borrower/ "investor" had no prospect of realizing anything of substance other than tax benefits). Interest payments are not deductible if they arise from transactions "that can not with reason be said to have purpose, substance, or utility apart from their anticipated tax consequences." *Goldstein v. Commissioner,* 364 F.2d 734, 740 (2d Cir.1966). Such transactions are said to lack "economic substance." *Jacobson v. Commissioner,* 915 F.2d 832, 837 (2d Cir.1990).

■ "In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of intent." 26 C.F.R. § 1.183–2(a).[1] *See also Jacobson,* 915 F.2d at 838 (applying objective test as specified in § 1.183–2(a)). Looking at the objective facts of FTI's shelter, the Tax Court determined that petitioners before us entered into these transactions solely for the purpose of claiming the tax deductions engendered. The Tax Court therefore found that the transactions lacked economic substance.

■ Whether a transaction lacks economic substance is a question of fact. Accordingly, we review the Tax Court's finding on that question for clear error. *Jacobson,* 915 F.2d at 837. And we find no such error. Petitioners had arranged, by futures contract, to sell their gold at a price which precluded any significant profit or loss on the underlying investment. Under the principles of *Jacobson, Goldstein,* and *Knetsch,* the Tax Court was correct to hold that the transactions were economically empty.

Petitioners argue, however, that a recent development in the law of this circuit justifies the deductions they took. They rely on our statement, toward the end of the opinion in *Jacobson,* that "Even if the motive for a

transaction is to avoid taxes, interest incurred therein may still be deductible if it relates to economically substantive indebtedness." *Jacobson,* 915 F.2d at 840. Understood in its traditional way, that statement simply reiterates the undoubted proposition that interest on loans incurred to support an economically substantive investment is not disqualified as a deduction merely because the borrower is also motivated by favorable tax consequences. Petitioners, however, emphasize the word *indebtedness* and would have us read the statement to mean that interest arising even from economically empty transactions can still be deducted so long as the debt itself has economic substance. They argue that a deduction is permitted unless the debt is a sham or is a nonrecourse obligation from which the taxpayer can walk away with impunity. They contend, in other words, that whenever there is an actual financial liability, the debt instrument itself has sufficient economic reality to support the deductibility of interest expenses. As it is not disputed that petitioners were liable to repay the amount of their loan, such a reading would indeed make their interest expenses deductible.

The strongest support for petitioner's view comes from the Fourth Circuit's opinion in *Rice's Toyota World, Inc., v. Commissioner,* 752 F.2d 89 (4th Cir.1985). *Rice's Toyota* involved a tax-motivated sale and leaseback of more than a million dollars in computer equipment. The Fourth Circuit found that the transaction had no economic substance—apart from expected tax benefits—and disallowed most of the claimed deductions. *Id.* at 91–92. It also found, however, that one recourse note involved in the transaction was a genuine debt with economic substance and held the interest on that particular note to be deductible. *Id.* at 96.

*Rice's Toyota* was cited by *Jacobson* for the well-established proposition that the presence of a tax-related motive for a transaction does not prevent interest expenses arising from that transaction from being deductible, so long as the debt is "economically substantive." *Jacobson,* 915 F.2d at 840. And one decision of the Tax Court has—

---

1. This rule, promulgated as a regulation under § 183, applies under § 163 as well. *See United* *States v. Wexler,* 31 F.3d 117, 123 (3d Cir.1994), and sources there cited.

incorrectly—read *Jacobson* as adopting *Rice's Toyota*'s broader idea that whether a debt contracted in return for an expected tax benefit will support an interest deduction depends simply on whether the debt itself is genuine. *See Lieber v. Commissioner,* T.C. Memo 1993-424, 66 T.C.M. (CCH) 722, 1993 WL 347353 (1993).

There is, however, a much more straightforward way of reading *Jacobson.* Most of the opinion in that case was dedicated to rejecting the Tax Court's finding that, on the facts of the case, the underlying transactions lacked economic substance. *Jacobson,* 915 F.2d at 839. Having found that there was economic substance in the overall deal, and hence that the taxpayer's interest deductions were presumptively valid, the court went on to consider whether one of several debts the taxpayer had incurred was itself real or sham. For, obviously, even a finding that an underlying transaction has economic substance cannot be sufficient to sustain deductions for interest expenses if the debt itself is nothing but a sham. In other words, *Jacobson* stands for the proposition that, in order for a deduction to be accepted, not only must the underlying transaction have economic substance, but the debt must be real as well.

In contrast, the statement in *Jacobson* upon which petitioner relies says nothing about situations where the underlying transaction is found to be empty. And, had the *Jacobson* court concluded that the underlying transaction in the case before it was devoid of economic substance, the question of whether the interest expenses at issue were deductible would have been answered in the negative without any need to inquire into the reality of the debt itself. So it is in the case before us.

There are compelling reasons to prefer this straightforward reading of *Jacobson* to the departure petitioner proposes. To adopt petitioner's reading would be to permit every shelter, no matter how transparently sham, to qualify for an interest expense deduction as long as the money used to finance the not-for-profit transactions involved were borrowed from a lender—any commercial bank would do—that demanded repayment. That result, soundly criticized by the Third Circuit in *United States v. Wexler,* 31 F.3d 117, 125 (3d Cir.1994) (rejecting *Rice's Toyota*), is

contrary to the longstanding jurisprudence of sham shelters from *Knetsch* on down. It would also squarely contradict our holding in *Goldstein.* (The debts in *Goldstein* were real obligations, to banks that expected to be repaid, and yet the deductions were disallowed. *See Goldstein,* 364 F.2d at 736.) There is no indication that *Jacobson* intended to overrule *Goldstein*—something that it could not have done in any case. *Ingram v. Kumar,* 585 F.2d 566, 568 (2d Cir.1978) (one panel of this circuit will not overrule another; panels are to be overruled only by the court *en banc*). *Goldstein* remains good law; *Jacobson*'s statement about the economic substance of debt states a necessary but not sufficient condition for the deductibility of interest.

By letter dated August 11, 1998, however, counsel for the Commissioner of Internal Revenue admits to an error in the computation of petitioners' tax liability. In the proceedings below, that liability was assessed at $17,420.00. The Commissioner now acknowledges that the actual amount of deficiency arising from these transactions should be only half that amount, namely, $8,710.00. We accept this correction.

We therefore affirm the decision of the Tax Court in all respects except as to the amount of petitioners' deficiency, and we remand to the Tax Court for the limited purpose of correcting the amount of deficiency as agreed by the Commissioner.