# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2171

_____

Larry L. Sather, Donor,

       Appellant,

    v.

Commissioner of Internal Revenue,

       Appellee.

_____

Sandra Sather, Donor,

       Appellant,

    v.

Commissioner of Internal Revenue,

       Appellee.

_____

John Sather, Donor,

       Appellant,

    v.

Commissioner of Internal Revenue,

       Appellee.

_____

Appeal from the
United States Tax Court.

Kathy  Sather, Donor,                                    *
                                                         *
                   Appellant,                            *
                                                         *
        v.                                               *
                                                         *
Commissioner of Internal Revenue,                        *
                                                         *
                   Appellee.                             *
_____                          *
                                                         *
Duane K. Sather, Donor,                                  *
                                                         *
                   Appellant,                            *
                                                         *
        v.                                               *
                                                         *
Commissioner of Internal Revenue,                        *
                                                         *
                   Appellee.                             *
_____                          *
                                                         *
Diane R. Sather, Donor,                                  *
                                                         *
                   Appellant,                            *
                                                         *
        v.                                               *
                                                         *
Commissioner of Internal Revenue,                        *
                                                         *
                   Appellee.                             *
_____                          *

Duane K. Sather Irrevocable Trust,
U/A 12/27/91, Transferee, John R.
Sather, Trustee,

   Appellant,

  v.

Commissioner of Internal Revenue,

   Appellee.

_____

Larry L. Sather Irrevocable Trust,
U/A 12/27/91, Transferee, Rodney
J. Sather, Trustee,

   Appellant,

  v.

Commissioner of Internal Revenue,

   Appellee.

_____

John R. Sather Irrevocable Trust,
U/A 12/27/91, Transferee, Rodney
J. Sather, Trustee,

   Appellant,

  v.

Commissioner of Internal Revenue,

   Appellee.

*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*

3

Submitted: January 12, 2001
Filed: June 7, 2001

Before WOLLMAN, Chief Judge, HANSEN and MURPHY, Circuit Judges.

HANSEN, Circuit Judge.

The Internal Revenue Service (IRS) imposed gift tax deficiencies and accuracy-related penalties on Larry Sather, Kathy Sather, John Sather, Sandra Sather, Duane Sather, and Diane Sather related to gifts made by each of them in 1993, and assessed transferee liability for gift tax deficiencies and penalties against the Duane K. Sather Irrevocable Trust (the Duane Trust), the Larry L. Sather Irrevocable Trust (the Larry Trust), and the John R. Sather Irrevocable Trust (the John Trust) related to gifts received by the trusts in 1992 from the above-named individuals. The tax court dismissed the assessments against Duane and Diane Sather as untimely.[1] As to the remaining Sathers and their related trusts, the tax court found that the transactions at issue involved cross-gifts, denied claimed annual exclusions, and upheld the tax deficiencies and a portion of the penalties. We affirm the imposition of gift tax deficiencies but reverse the accuracy-related penalties.

I.

This case involves the transfer of stock in a closely-held family business from one generation to the next. The Sather brothers, Larry, John, Duane, and Rodney (collectively the "brothers"), along with Larry's, John's, and Duane's wives, Kathy, Sandra, and Diane, respectively (collectively the "wives"), owned 100% of the stock

---

[1]The IRS does not appeal this ruling.

in Sather, Inc., which they previously received from the brothers' parents. At the time of the transfers at issue, Rodney was unmarried and had no children. Larry, John, and Duane each had three children. In an effort to transfer the stock of Sather, Inc., to the next generation of Sathers, the brothers consulted their accountant for advice on structuring the transfer. Upon their accountant's advice, Larry, John, and Duane and each of their respective wives transferred $9,997 worth of stock to each of their children and to each of their nieces and nephews on December 31,1992. Larry, John, and Duane also transferred additional shares to their own children to effect the full transfer of Sather, Inc., stock to the next generation of Sathers. On January 5, 1993, Larry, John, and Duane each transferred $19,994 worth of stock to each of their nieces and nephews and approximately $15,000 worth of stock to each of their own children. The wives each transferred $3,283 worth of stock to each of their own children.[2] The transfers were made to irrevocable trusts for each set of children (Larry's, John's, and Duane's).

Each donor filed a separate gift tax return for 1992, claiming nine $10,000 gift tax exclusions, one for each donee (each individual's own three children and six nieces and nephews, or nine nieces and nephews in Rodney's case). Each donor likewise filed a gift tax return for 1993, again claiming nine $10,000 gift tax exclusions and electing to have each gift treated as made one-half by each spouse, as allowed under the Internal Revenue Code (I.R.C.) § 2513, 26 U.S.C. § 2513 (1994). On August 13, 1997, the IRS issued notices of gift tax deficiencies and penalties to each of the individual donors for the 1993 tax period. On October 9, 1997, the IRS issued notices of gift tax deficiencies and penalties to each trust as transferee for the

---

[2]Rodney also made transfers of approximately $10,000 worth of stock to each of his nieces and nephews on both dates and made transfers to the other brothers, but those transfers are not at issue here. Rodney was not assessed any additional tax as the transfers to his nieces, nephews, and brothers were all bona fide transfers; neither he nor his immediate family (he had none) received anything in exchange.

1992 tax period.[3]  The IRS allowed only three $10,000 exclusions per year for each of the donors--Larry, Kathy, John, Sandra, Duane, and Diane--and assessed gift taxes and penalties based on the remaining transfers.  The IRS reasoned that the gifts to each of the donors' own children were valid gifts, but that the gifts to each niece and nephew were constructive gifts to the donors' own children.

Each donor and each trust filed separate petitions in the United States Tax Court, challenging the deficiencies, penalties, and transferee liability.  The tax court consolidated the cases for trial purposes and tried the consolidated cases on June 17, 1999.  The tax court issued a memorandum findings of fact and opinion on September 17, 1999, dismissing the assessments against Duane and Diane Sather as untimely, and upholding the deficiency assessments against the remaining donors for the 1993 gifts and against the transferee trusts for the 1992 gifts.  The tax court also upheld the accuracy-related penalties based on transfers made by Kathy, Sandra, and Diane, but dismissed the penalties based on transfers made by Larry, John, and Duane, finding that the brothers (but not their respective wives) had reasonably relied on their accountant and attorney.  The tax court entered judgment in each case on November 16, 1999.

## II.  Appellate Jurisdiction

We have jurisdiction over appeals from tax court cases pursuant to Section 7482 of the Internal Revenue Code.[4]  The IRS argues that we lack jurisdiction to hear

---

[3]The IRS assessed the taxes for 1992 against the trusts rather than the individuals because the statute of limitations had run against the donors.  Transferee liability may be assessed for one year past the donor's statutory period, which expires three years after the return is filed.  See I.R.C. §§ 6501(a), 6901(c)(1).

[4]This appeal was originally filed in the Seventh Circuit because the tax court was located within that circuit.  It was transferred to the Eighth Circuit pursuant to I.R.C. § 7482(b)(1)(A).

this appeal, however, because the appellants filed a single notice of appeal. While we recognize that a notice of appeal is jurisdictional, see Klaudt v. United States Dep't of the Interior, 990 F.2d 409, 411 (8th Cir. 1993), we hold that the notice in this case was sufficient to confer jurisdiction for each of the cases.

A notice of appeal is liberally construed and mere technicalities will not foreclose the court's review, particularly where the intent to appeal is apparent, and there is no prejudice to the adverse party. See id. The Sathers' notice of appeal was filed on December 16, 1999, well within the 90 days allowed to appeal from a tax court decision. See Fed. R. App. P. 13(a)(1). Rule 3 of the Federal Rules of Appellate Procedure requires that the notice of appeal "specify the party or parties taking the appeal by naming each one in the caption or body of the notice." Fed. R. App. P. 3(c)(1)(A). However, "[a]n appeal must not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. (3)(c)(4) (emphasis added). The emphasized part of the rule was added in 1993 in response to the Supreme Court's Torres v. Oakland Scavenger Co., 487 U.S. 312 (1988) opinion, where the Supreme Court held that a notice which inadvertently omitted the name of one of 16 interveners was insufficient to effect an appeal for that individual. See 487 U.S. at 315-17; see also Fed. R. App. P. 3, 1993 Amendments, Note to Subdivision (c) (discussing change in Rule 3 following Torres). "The test . . . for determining whether [] designations [other than by name] are sufficient is whether it is objectively clear that a party intended to appeal." Fed. R. App. P. 3, 1993 Amendments, Note to Subdivision (c), para. 2.

The notice of appeal named the appellants as "Larry L. Sather, Donor, et al." and listed the docket numbers for each of the nine cases, which had been consolidated for trial purposes below. (App. at 102.) The notice stated that "the petitioners, Larry L. Sather, et al, hereby appeal . . . from the decision of th[e Tax] Court entered in the above-captioned consolidated proceeding on the Seventeenth day of September 1999." (Id.) The decision referred to in the notice is the consolidated memorandum

opinion, which likewise named the petitioners as "Larry L. Sather, Donor, et al." in its caption. Based on these facts, the notice satisfied Rule 3(c)(1)(A). Cf. Torres, 487 U.S. at 317 (noting that the appellant "was never named or otherwise designated" on the notice of appeal) (emphasis added); Twenty Mile Joint Venture, PND, Ltd. v. Comm'r, 200 F.3d 1268, 1274 (10th Cir. 1999) (finding Rule 3 not met because there was no mention of a particular party in the notice of appeal by name or docket number); Dodger's Bar & Grill, Inc. v. Johnson County Bd. of County Comm'rs, 32 F.3d 1436, 1440-41 (10th Cir. 1994) (holding that a notice stating that "appeal is by Dodger's 'and the other individually-named plaintiffs' is sufficient to confer jurisdiction.").

Rule 3(c) also requires designation of "the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). Although the notice specified the memorandum opinion rather than the individual judgments as the decision from which an appeal was sought, the notice sufficiently put the IRS on notice that the final judgments were being appealed. The judgments contained only the final disposition of each case, which was also evident from the memorandum opinion. The IRS conceded at oral argument that it was not prejudiced by the notice. The appellants' reference to the memorandum opinion satisfied Rule 3(c)(1)(B). See Hawkins v. City of Farmington, 189 F.3d 695, 704-05 & n.9 (8th Cir. 1999) (holding that where intent to appeal an order not specifically named in the notice of appeal is apparent and the appellee is not prejudiced, the court may hear the appeal).

The cases cited by the IRS concerning the consolidation of appeals do not support the IRS's position that the notice of appeal was insufficient. There is no requirement that separate notices of appeal be filed on separate pieces of paper. The IRS had sufficient notice that an appeal was being taken from each individual case. Further, the appellants in the cases relied upon by the IRS attempted to use a timely-filed notice of appeal for one case to boot strap an appeal for a related case, which had been consolidated for trial purposes only, but which had been disposed of at an earlier date. The notice of appeal was untimely as to the disposition of one of the

cases, and our brethren held in both instances that because the cases were not consolidated for disposition purposes, the notice of appeal was untimely as to the previously dismissed case. See Mendel v. Prod. Credit Ass'n of the Midlands, 862 F.2d 180, 182 (8th Cir. 1988) (holding a notice of appeal covering two "informally consolidated" cases untimely as to one because of the timing of the district court's disposition of motions to reconsider in each, not commenting on the fact that both were included in the same notice of appeal); Page v. Comm'r, 823 F.2d 1263, 1269 (8th Cir. 1987) (holding similarly where a motion to revise one tax court decision stayed the running of the time to appeal for that case but not the "informally consolidated" case for which no similar motion was filed), cert. denied, 484 U.S. 1043 (1988). They did not hold that the notice of appeal was insufficient because it was on the same piece of paper as the notice for another informally consolidated case.

## II. Reciprocal Gifts

The Internal Revenue Code imposes a tax "on the transfer of property by gift," I.R.C. § 2501(a), "whether the gift is direct or indirect," I.R.C. § 2511(a). The first $10,000 worth of gifts of a present interest made to any person in a calendar year is excluded from the definition of a taxable gift. I.R.C. § 2503(b). Thus, it is not uncommon for taxpayers to avoid the gift tax by structuring gifts just below the $10,000 exclusion limit. This case requires us to determine whether the gifts in this case, similar gifts made by the donors to each other's children, are really cross-gifts, that is, indirect gifts to their own children.

The tax court found that the cumulative transfers at issue lacked economic substance, relying on the reciprocal trust doctrine. The Sathers argue that there is economic substance to the transactions as a whole when Rodney's gifts to the nieces and nephews are considered, as is required by the step-transaction doctrine. Whether a transaction lacks economic substance, and whether several transactions should be considered integrated steps of a single transaction, are both fact questions which we review for clear error. See Lee v. Comm'r, 155 F.3d 584, 586 (2d Cir. 1998)

(reviewing economic substance); <u>Robino, Inc. Pension Trust v. Comm'r</u>, 894 F.2d 342, 344 (9th Cir. 1990) (reviewing step-transaction doctrine).

The reciprocal trust doctrine, a variation of the substance over form concept, <u>see</u> <u>Exch. Bank and Trust Co. of Fla. v. United States</u>, 694 F.2d 1261, 1265 (Fed. Cir. 1982), was developed in the context of trusts to prevent taxpayers from transferring similar property in trust to each other as life tenants, thus removing the property from the settlor's estate and avoiding estate taxes, while receiving identical property for their lifetime enjoyment that would likewise not be included in their estate. <u>See</u> <u>United States v. Grace</u>, 395 U.S. 316, 320 (1969). The Supreme Court held that the reciprocal trust doctrine applies to multiple transactions when the transactions are interrelated and, "to the extent of mutual value, leave[] the settlors in approximately the same economic position as they would have been in had they created trusts naming themselves as life beneficiaries." <u>Id.</u> at 324. The doctrine seeks to discern the reality of the transaction; "'the fact that the trusts are reciprocated or 'crossed' is a trifle, quite lacking in practical or legal significance.'" <u>Id.</u> at 321 (quoting <u>Lehman v. Comm'r</u>, 109 F.2d 99, 100 (2d Cir.), <u>cert. denied</u>, 310 U.S. 637 (1940)).

Substance over form analysis applies equally to gift tax cases. <u>See, e.g.</u>, <u>Heyen v. United States</u>, 945 F.2d 359, 363 (10th Cir. 1991); <u>Chanin v. United States</u>, 393 F.2d 972, 979-80 (Ct. Cl. 1968). It is impliedly included in the gift tax statute itself--including indirect transfers within the definition of a taxable gift. <u>See</u> I.R.C. § 2511(a). "'The terms 'property,' 'transfer,' 'gift,' and 'indirectly' are used in the broadest and most comprehensive sense; . . . . The words 'transfer . . . by gift' and 'whether . . . direct or indirect' are designed to cover and comprehend all transactions . . . whereby . . . property or a property right is donatively passed . . . .'" <u>Dickman v. Comm'r</u>, 465 U.S. 330, 334 (1984) (quoting H.R.Rep. No. 708, 72nd Cong., 1st Sess., 27-28 (1932) and S.Rep. No. 665, 72nd Cong., 1st Sess., 39 (1932)) (some alterations

in original).  Application of the reciprocal trust doctrine[5] is likewise appropriate in the gift tax context as a method for discerning the substance of gift transfers.  "'The purpose of the doctrine is merely to identify the transferor of property.'"  Exchange Bank, 694 F.2d at 1267 (quoting Bischoff v.  Comm'r, 69 T.C. 32, 45-46 (1977)).  Once the transferor is identified, the tax code determines whether the transfer is subject to tax.  Id.

Applying the reciprocal trust doctrine to this case, there can be no doubt that the gifts were interrelated.  The Sather brothers together sought advice on how to transfer the stock to the next generation of Sathers.  The transfers to all the children were made on the same days and were for the same amounts of stock.  We cannot say that the tax court erred--clearly or otherwise--in determining that the transfers were interrelated.

The second prong of the Grace analysis requires that "the settlors [be left] in approximately the same economic position as they would have been in had they created trusts naming themselves as life beneficiaries."  Grace, 395 U.S. at 324.  We do not believe that the Supreme Court meant to limit the doctrine to cases involving life estate trusts, or even to cases where the donor retains an economic interest, but used that language in the context of the specific facts of the case.  See, e.g., Exchange Bank, 694 F.2d at 1268-69 (holding that the doctrine applies to transfers made under the Florida Gifts to Minors Act, wherein each spouse transferred equal amounts of property to their children, naming the other spouse as custodian).  "Grace  does not speak in terms of a retained economic interest--rather, that the arrangement 'leaves the

---

[5]The tax court has taken to calling it the "reciprocal transaction doctrine" in the context of reciprocal indirect transfers outside the trust arena.  See Schuler v. Comm'r, 2000 WL 1899302 (Tax Ct. Dec.  28, 2000) (relying in part on the tax court's opinion in this case to hold that gifts by the taxpayer of stock of one family-owned company to the taxpayer's brother's children, in exchange for gifts of stock of another family-owned company by the brother to the taxpayer's children were in essence gifts to the taxpayer's children).

settlors in approximately the same economic position . . . ."' Id. at 1268. In this case, the parents transferred stock to their nieces and nephews in exchange for transfers to their own children by the nieces' and nephews' parents. Though the Sathers received no direct economic value in the exchange, they did receive an economic benefit by indirectly benefitting their own children. The donors were in the same economic position--the position of passing their assets to their children--by entering the cross-transactions as if they had made direct gifts of all of their stock to their own children.[6] Applying the analysis of the reciprocal trust doctrine, we hold that these interrelated gifts were reciprocal transactions that must be uncrossed to reach the substance of the transactions. See Schultz v. United States, 493 F.2d 1225, 1226 (4th Cir. 1974) (disallowing gift tax exclusions where two brothers made gifts to each other's children as well as their own).

The purpose of the second Grace prong is to discern the taxability of the transactions as uncrossed in the context of a particular set of facts. See Exchange Bank, 694 F.2d at 1267 (discussing Bischoff). Uncrossing the gifts in the present case, the tax court made the factual finding that each immediate family was in the same position as if each donor had made gifts only to the donor's own children. Thus, using the reciprocal trust doctrine to identify the actual transferor, each donor made transfers to each of his or her own children but no gifts to any of the nieces and nephews. See Schultz, 493 F.2d at 1226. We cannot say that the tax court clearly erred in making this factual finding. Under I.R.C. § 2503(b), each transferor--Larry, Kathy, John, Sandra, Duane, and Diane--was entitled to one $10,000 exclusion for gifts made to each uncrossed donee, their own children, for each year in which gifts were made. Because each transferor has only three children but claimed nine

---

[6] In so holding, we are careful not to focus only on the economic position of the donees, as suggested recently by the tax court. See Schuler, 2000 WL 1899302 ("The relevant inquiry in reciprocal indirect transfer cases is whether the transferees are in approximately the same economic position . . ..")

exclusions, the IRS correctly determined that the transferors understated their gift tax liabilities.

The Sathers argue that the step-transaction doctrine requires us to consider the gifts made by Rodney to each of his nieces and nephews, and that in so doing, we will find economic substance in the whole transaction. Each of Larry's, John's, and Duane's immediate families had a net increase in economic value, while Rodney's immediate family (consisting only of himself) had a net decrease in economic value. True as this may be, it does not change the fact that uncrossing the reciprocal gifts leaves each of the transferors in the same position as if he or she had transferred stock only to his or her own children. The purpose of the reciprocal trust doctrine is to discern the actual transferor--Rodney's transfers do not affect the reality of the other transferors' gifts, which amounted to a transfer of their own stock to their own children.

The Sathers also argue that the tax court erred in excluding evidence of their intent, which was purportedly to transfer the stock to the next generation of Sathers, not to avoid taxes. Noting that the subjective intent of the parties, particularly when the parties are related, "creates substantial obstacles to the proper application of the federal estate tax laws," the Supreme Court held that "'taxability . . . depends on the nature and operative effect of the trust transfer.'" Grace, 395 U.S. at 323 (quoting Estate of Speigel v. Comm'r, 335 U.S. 701, 705 (1949)). The same holds true for federal gift tax laws. It is not "necessary to prove the existence of a tax-avoidance motive." Id. at 324. Rather, "an objective analysis of the parties' economic positions should predominate." Exchange Bank, 694 F.2d at 1266. Thus, the Sathers' argument regarding their intent is only marginally, if at all, relevant. Additionally, the tax court did consider the stated intent in its opinion, but dismissed it as irrelevant. (See Add. A. at 5, 13.) Thus, the tax court did not abuse its discretion in excluding any evidence regarding the Sathers' subjective intent. See Little v. Comm'r, 106 F.3d 1445, 1449 (9th Cir. 1997) (standard of review for exclusion of evidence in appeal from tax court).

## III. Transferee Liability

The parties do not dispute that a transferee is directly liable for gift tax if the tax is not paid by the donor when it is due. See IRC § 6324(b); Mississippi Valley Trust Co. v. Comm'r, 147 F.2d 186, 187-88 (8th Cir. 1945) (construing the predecessor of 6324(b)). The only real issue raised regarding transferee liability is the fact that the IRS assessments of liability mailed to the Larry Trust and to the Duane Trust named the wrong donor.

The tax assessment sent to the Larry Trust named Diane (Duane's wife) as the donor for whom the trust was being assessed the tax. Likewise, Sandra (John's wife) was named as the donor in the assessment sent to the Duane Trust. Based on the IRS's disallowance of gifts to the nieces and nephews, the trusts should have been assessed transferee liability for gifts made by the wife of the settlor (Kathy's gift tax liability should have been assessed against the Larry Trust and Diane's gift tax liability should have been assessed against the Duane Trust).

The trusts argue that the IRS has failed to meet its burden of proof regarding the assessment of transferee liability, see I.R.C. § 6902(a) (Commissioner has burden of proving the petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax), because there was no evidence offered as to the correct donor.

The IRS must prove only that the transferee was the recipient of a taxable transfer, the gift tax was not paid when due, and the extent of the value of the gift. See I.R.C. § 6324(b) ("If the [gift] tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift."). The parties agree that each wife made gifts of slightly under $10,000 to each of her own children in trust and to each of her nieces and nephews in trust. The gift tax returns indicating these transfers were introduced at trial. (App. at 12-13, Stipulation of Facts, ¶¶ 15-20.) The tax court determined that the gifts made to each wife's six

14

nieces and nephews were reciprocal gifts, and found them to be indirect gifts to each wife's own three children via the trusts. We have now affirmed that finding by the tax court. Because the total amount of the uncrossed gifts made to each wife's children during 1992 exceeded the $10,000 annual exclusion, each trust was the recipient of a taxable transfer. The parties stipulated that no gift taxes were paid for any gifts made in 1992. (App. at 18, Stipulation of Facts, ¶ 53.) The parties do not dispute the amounts of any of the gifts or that the gifts exceed the amount of the assessed deficiencies. Thus, the IRS has met its burden of establishing that the trusts were donees of gifts for which gift taxes have not been paid and that the gifts exceed the amount of the assessments. The appellants' contention has no merit.

To the extent that the trusts take issue with the notices of deficiency stating the wrong donor, the notices were sufficient to place the trusts on notice of the assessment. "The [IRC] does not specify the form or content of the notice. The purpose of the notice is only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough. Thus, the notice generally must indicate that a deficiency has been determined and identify the taxpayer, the taxable year involved, and the amount of the deficiency. In short, the notice must meet the general fairness requirements of due process." Estate of Yaeger v. Comm'r, 889 F.2d 29, 35 (2d Cir. 1989) (internal citations and quotations omitted), cert. denied, 495 U.S. 946 (1990). The trusts do not argue that they were denied due process or otherwise treated unfairly by the notices. They argue only that because the notices stated the incorrect donor, the IRS has not met its burden of proving the identity of the donor. Despite the incorrect notices, as we stated above, the stipulated facts and the tax court's finding of reciprocated gifts satisfy the requisite burden of proving the transferee liability--that the trusts were recipients of gifts for which gift tax was owed and not paid.

IV. Accuracy-Related Penalties

Section 6662(a) imposes an accuracy-related penalty of twenty percent of "any portion of an underpayment of tax required to be shown on a return" if the underpayment is attributable to, *inter alia*, negligence. I.R.C. §§ 6662(a), (b)(1). The Tax Code creates an exception to the accuracy-related penalty for reasonable cause if the taxpayer acted in good faith. I.R.C. § 6664(c). Reliance on tax professionals does not necessarily constitute reasonable cause, but may if all pertinent facts and circumstances are taken into account and the advice is not based on unreasonable factual or legal assumptions. See Treas. Reg. §§ 1.6664-4(b), (c). Additionally, "[r]eliance may not be reasonable or in good faith if the taxpayer knew, or should have known, that the advisor lacked knowledge in the relevant aspects of Federal tax law." Treas. Reg. § 1.6664-4(c)(1). Aside from whether reliance on the tax professional constituted reasonable cause, the taxpayer must still rely on the advice in good faith. We review the tax court's factual determinations of whether a taxpayer qualifies for the reasonable cause exception for clear error. See Srivastava v. Comm'r, 220 F.3d 353, 367 (5th Cir. 2000); Parrish v. Comm'r, 168 F.3d 1098, 1102 (8th Cir. 1999).

The tax court found that the Sather brothers reasonably and in good faith relied on the advice of their long-time accountant and attorney. (Add. A. at 18-19.) The Sathers sought the advice of their accountant, whose 30 years of experience as an accountant included employment with the IRS, for the purpose of structuring the transfer of stock. The accountant conferred with the Sathers' long-time attorney. The accountant prepared all of the gift tax returns at issue. The IRS does not dispute, nor did it appeal the issue, that the Sather brothers reasonably relied, in good faith, on their accountant's advice.

The tax court felt constrained to hold otherwise with respect to the Sather wives, however, because none of the wives testified at trial about their reliance and the tax court found no other evidence of their reliance. Bound by the presumption in

16

favor of a penalty assessment by the IRS and the taxpayers' burden of proving error, see Little, 106 F.3d at 1449-50, the tax court found that there was "no evidence in this record as to what steps the[ wives] took to ensure their returns were proper." (Add. A. at 19.) We believe this finding is clearly erroneous, however, as there was evidence of the wives' reliance on the accountant, whom the tax court found to be a competent advisor and fully informed of the relevant facts.

The wives each filed separate gift tax returns from their respective husbands for both years involved. However, each wife's gift tax returns were nearly identical to her husband's. As noted by the tax court, the accountant prepared all the returns, including the wives' returns. Advice is defined by the treasury regulations as "any communication . . . setting forth the analysis or conclusion of a person, other than the taxpayer, provided to . . . the taxpayer and on which the taxpayer relies, directly or indirectly . . . . Advice does not have to be in any particular form." Treas. Reg. § 1.6664-4(c)(2) (emphasis added). We believe the tax court erroneously declined to consider the fact that the wives each signed a gift tax return, prepared by their respective husband's accountant and nearly identical to their husband's return, as evidence that the wives also relied upon the accountant. For the same reasons that the Sather brothers' reliance was reasonable and in good faith, we believe that the wives' reliance, evidenced by signing and filing returns prepared by the accountant, was likewise reasonable and in good faith. We thus reverse the imposition of accuracy-related penalties and vacate those penalties as against Kathy Sather and Sandra Sather related to the 1993 returns and as against each of the trusts, as transferees, related to the 1992 returns filed by each of the wives.

## V. Conclusion

The transfers of stock to each donor's nieces and nephews were reciprocal transfers, or cross-gifts, made in exchange for identical transfers from the nieces and nephew's parents to the donor's own children. As such, the transfers must be uncrossed and the tax code applied to the substance of the transactions. The IRS

17

correctly determined that each donor was entitled to three $10,000 exclusions. The signed returns prepared by the accountant, found by the tax court to be a reliable advisor, provide sufficient evidence of Kathy's, Sandra's, and Diane's reliance and afford them the protection of the reasonable cause exception to the accuracy-related penalties. We therefore affirm in part and reverse in part the tax court's decision.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT