# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2109

_____

Estate of Robert V. Schuler,                      *
Deceased; Jay Schuler and Thomas                  *
Schuler, Co-Personal Representatives,             *
                                                  *
                 Appellants,                      *    Appeal from the
                                                  *    United States Tax Court.
          v.                                      *
                                                  *
Commissioner of Internal Revenue,                 *
                                                  *
                 Appellee.                        *

_____

Submitted:  November 15, 2001
    Filed:  March 7, 2002

_____

Before LOKEN, HEANEY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.


     During 1994 and 1995, the decedent, Robert Schuler, transferred stock in two family-owned businesses to members of his brother's family.  The Internal Revenue

Service (IRS) determined the stock transfers were reciprocal cross-gifts and assessed a deficiency of $215,758 against the estate. The United States Tax Court[1] upheld the deficiencies. We affirm the tax court's judgment.

## I. BACKGROUND

### A. Factual Summary

Two brothers, Robert Schuler (Robert) and George Schuler, Jr. (George), owned interests in two family operated companies – Minn-Kota Ag Products, Inc. (Minn-Kota) and Sigco Sunplant, Inc. (Sigco). Prior to the stock transfers at issue, George's son, Jody, owned all Minn-Kota Class A voting common stock, and Robert's son, Jay, George, and Jody owned all the restricted Class B common stock. Sigco was equally owned by Robert and George.

Before Robert's death, he and George had discussed with their insurance agent their desire to have their families succeed them in the businesses. The brothers told their insurance agent they wanted Robert's family to control Sigco and George's family to control Minn-Kota. Together, with assistance from the insurance agent, Robert and George devised two three-step plans to transfer divided ownership of Minn-Kota and Sigco to each other's family and to employ section 2503(b) of the Internal Revenue Code to exclude the transfers from estate taxes.

The first step for gaining family control of Sigco required Robert and his wife to make joint gifts of Sigco stock equal to approximately $20,000 each to their children, their spouses and grandchildren and to Jody, his wife and son during December 1994 and January 1995. The second step required George and his wife to make joint transfers of stock equal to approximately $20,000 to each of Robert's

[1] The Honorable Carolyn Miller Parr, United States Tax Court. Estate of Schuler v. Commissioner, 80 T.C.M. (CCH) 934 (2000).

children and their spouses. The third step required several of Robert's children to transfer their shares to four siblings, including Jay and his children.

Similarly, the first step for gaining family control of Minn-Kota required George and his wife to make joint gifts of Minn-Kota stock valued at approximately $20,000 to each of their children and grandchildren in December 1994 and January 1995. The second step required Robert and his wife to transfer approximately $20,000 of Minn-Kota stock each to George, his wife and their children. The third step required some of George's children and their spouses to transfer stock valued at approximately $10,000 each to Jody, his wife, and their children.

Between December 1994 and January 1995, Robert transferred stock valued at $440,467.20 to George's family, and George transferred stock valued at $382,140 to Robert's family. After these stock transfers, Robert's family owned nearly 80 percent of Sigco, George's family owned nearly 68 percent of Minn-Kota, and Jody retained ownership of all Minn-Kota voting common stock.

Robert and George separately filed Form 709s[2] for the years 1994 and 1995. On both Form 709s Robert and his wife claimed twelve gift tax exclusions for gifts made to George's family along with additional exclusions for gifts made to their own family members. On both Form 709s George and his wife claimed nine gift tax exclusions for gifts made to Robert's family along with additional exclusions for gifts made to their own family members.

In October 1995, Robert died. His sons, Jay and Thomas Schuler, filed a Form 706[3] excluding gifts of Sigco and Minn-Kota stock made in 1994 and 1995 from their deceased father's taxable gifts. Thereafter, on December 18, 1996, January 2, 1997,

_____

[2] United States Gift (and Generation-Skipping Transfer) Tax Return.

[3] United States Estate (and Generation-Skipping Transfer) Tax Return.

-3-

and January 2, 1998, George and his wife made transfers of Minn-Kota stock, each valued at $19,926, to Robert's son, Jay. The aggregate value of these three subsequent stock transfers totaled $59,778, which, when added to the value of George's 1994-95 stock transfers, amounted to $441,918, or just $1,451 more than the value of stock Robert had transferred to George's family in 1994 and 1995.

### B. Procedural Summary

In June 1999, the IRS issued to Robert's estate a notice of deficiency in the amount of $215,758. The IRS denied annual exclusions for gifts made by Robert in 1994 and 1995 to members of George's family on the basis that "[s]uch gifts are reciprocal or cross gifts designed to maximize gifts to the donor's family while sheltering such gifts through annual exclusions to other donees." In August 1999, the estate filed a petition in the tax court objecting to the deficiency. The sole issue before the tax court was whether Robert's transfers of stock in 1994 and 1995 to George's family were, in substance, indirect gifts of stock to members of his own family.

A trial was conducted on a partially stipulated record on June 12, 2000. On December 28, 2000, the tax court filed a Memorandum Findings of Fact and Opinion. Applying the reciprocal trust doctrine set forth in United States v. Estate of Grace, 395 U.S. 316, 321 (1969), the tax court found the stock transfers were inter-related, a quid pro quo, and the brothers' plans to exchange stock via transfers to each other's families on the exact days in 1994 and 1995 established reciprocal transfers. The tax court further found Robert's family members received gifts of stock of approximately the same economic value, via the circuitous route devised, as they would have received by direct transfers from Robert. The tax court also rejected as implausible the estate's claim that the reciprocal trust doctrine did not apply because Robert would have made the stock transfers to George's family regardless of whether George had made reciprocal transfers. The tax court explained that it is "well settled that the Federal estate tax does not hinge upon the subjective intent of the decedent."

Based on these findings, the tax court sustained the IRS's determination of a $215,758 deficiency. The estate now appeals, claiming the tax court erred in finding the gifts given to each family were substantially similar and in finding the brothers were in the same economic position as if they had made the transfers directly to their own children.

## II.    DISCUSSION

We have jurisdiction over appeals from the tax court pursuant to 26 U.S.C. § 7482. We review the tax court's factual findings for clear error and its legal conclusions de novo. Bean v. Commissioner, 268 F.3d 553, 556 (8th Cir. 2001). "Whether a transaction lacks economic substance, and whether several transactions should be considered integrated steps of a single transaction, are both fact questions which we review for clear error." Sather v. Commissioner, 251 F.3d 1168, 1173 (8th Cir. 2001) (citations omitted).

For purposes of this appeal, we must determine whether the gifts at issue, similar stock transfers made by Robert and George to each other's children, were reciprocal cross gifts, that is, indirect gifts to each donor's own children. In doing so, we are guided by our recent decision in Sather. Id. at 1173-76 (applying the reciprocal trust doctrine[4] in a gift tax context to determine the economic substance of gift transfers).

We explained in Sather that the reciprocal trust doctrine is a variation of the substance over form concept which developed in the trust context "to prevent taxpayers from transferring similar property in trust to each other as life tenants, thus removing the property from the settlor's estate and avoiding estate taxes, while

---

[4]The tax court refers to the doctrine as the "reciprocal transaction doctrine" and applies this doctrine terminology to reciprocal indirect transfers occurring outside the trust area.

receiving identical property for their lifetime enjoyment that would likewise not be included in their estate." Id. at 1173 (citing Estate of Grace, 395 U.S. at 320). The application of the reciprocal trust doctrine is not limited only to identifying the true transferor or transferee, but also applies to determining the nature of the property transferred. Sather, 251 F.3d at 1174. The doctrine applies to multiple transactions which are interrelated and which, "to the extent of mutual value, leave . . . the settlors in approximately the same economic position as they would have been in had they created trusts naming themselves as life beneficiaries." Id. at 1173-74 (quoting Estate of Grace, 395 U.S. at 324).

Applying these trust principles to gifts in Sather, we ruled the gifts were part of a jointly designed and executed plan devised for the purpose of benefitting each brother's own children. Id. at 1174-75. The Sather case involved three brothers, each of whom had three children. The Sather brothers made identical gifts of stock in a family-owned corporation on the same date to each of their children and to each of their six nieces and nephews for a total of nine gifts. A fourth, unmarried brother also made identical gifts of stock on the same date to his nine nieces and nephews. Id. at 1170-71.

Subsequent to the stock transfers, each child (transferee) was left in the same economic position as if his father had given the stock directly to him. Id. at 1174-75. We deemed as immaterial the fact that the brothers circuitously routed the gifts to their own children through their nieces and nephews, and we upheld the tax court's ruling that each brother was entitled to only three annual exclusions. We also concluded that the result was not affected by the fact the fourth, unmarried brother had made gifts of stock to his nieces and nephews which resulted in a net decrease in his economic value. The effect of uncrossing the reciprocal transfers left each of the transferors (except the unmarried brother) with children in the same economic position as if he had made stock transfers only to his own children. Id. at 1175.

-6-

Applying the reciprocal trust doctrine to this case, we cannot say the tax court was clearly erroneous in finding the gifts of stocks were interrelated. Robert and George Schuler jointly sought the advice of their insurance agent on how to have their children succeed them in the family-owned businesses. With their insurance agent's assistance, they devised a plan whereby Robert's family would increase its interest in Sigco while George's family would increase its interest in Minn-Kota. The 1994 and 1995 reciprocal transfers of stock were identical in type and amount and occurred on the same days. Similar to the Sather brothers, the Schuler brothers received no direct economic benefit from the stock transfers, but they received an economic benefit indirectly by benefitting their children as successors to the family-controlled businesses.

The Schulers contend their case is distinguishable from Estate of Grace and Sather, inter alia, because those cases involved transfers of identical property. In contrast, Schulers argue this case involves transfers of stock in two distinct companies whose assets, businesses, and management are different. We find such distinctions immaterial. Certainly, the three-part plans jointly executed in this case were more complicated than the transfers in Sather. However, the net effect was the same – simultaneous cross transfers of stock amounting to transfers of each brother's stock to his own children.

Nor are we persuaded the tax court was clearly wrong in finding inter-relatedness when Robert and George had a business purpose in separating the ownership of the two businesses between the children of the two Schuler families. Intrafamily transfers demand close scrutiny "precisely because the genuineness of the transaction cannot reasonably be inferred" from assurances of business purpose. Kincaid v. United States, 682 F.2d 1220, 1225 (5th Cir. 1982) (quoting Fehrs v. United States, 620 F.2d 255, 260 (Ct. Cl. 1980)). In this case, the tax court flatly rejected the assertion that business purpose was the primary motivation for making the reciprocal stock transfers. Instead, the tax court reached the "inescapable

conclusion that decedent and his brother made the circuitous transfers for the primary purpose of increasing the number of exclusions under section 2503 (b) that otherwise would have been available to them."

After uncrossing the gifts to discern the taxability of the transactions, the tax court found Robert's children received stock from George of approximately the same economic value as they would have received by direct transfers from Robert. The tax court rested its finding on the fact that the difference in the value of the 1994 and 1995 cross stock transfers, which amounted to $58,327.20, was all but eliminated by George's transfers of stock valued at $59,778 to Robert's son in the three years following Robert's death.

The Schulers contend the tax court ignored the substantial changes in ownership and control that resulted from the reciprocal transfers. After the stock transfers, the Schulers claim Robert's family interest in Sigco increased from 75 percent to 80 percent.[5] In analyzing the effect of the stock transfers, the tax court recognized the stock transfers resulted in a small shift in Sigco ownership from 75 percent to almost 80 percent. Before the transfers, Robert owned 25 percent of Sigco shares outstanding and his son, Jay, owned 50 percent; together they owned a 75 percent majority. Before and after the transfers, George's son, Jody, owed 100 percent of the Minn-Kota voting stock. Thus, the tax court found that acquiring control of the family business was not the purpose of the transfers.

## III.   CONCLUSION

We cannot say the tax court clearly erred in finding that, following the 1994 and 1995 stock transfers, and also considering George's transfers of stock in the next three years to Robert's son, Robert's children were left in approximately the same

---

[5] The stipulated record does not support the Schulers' claim that Robert's family acquired a full 80 percent ownership in Sigco.

economic position as if Robert had made direct transfers of his stock and estate to them.

For the reasons set forth above, we affirm the tax court's decision.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.