# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1118

_____

Mark W. Senda and Michele Senda,    *
                                           *
           Appellants,           *
                                           *    Appeal from the United States
      v.                         *    Tax Court.
                                           *
Commissioner of Internal           *
Revenue                                 *
                                           *
           Appellee.             *

_____

Submitted: September 12, 2005
Filed:   January 6, 2006

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Mark W. Senda and his wife, Michele Senda, received a notice from the Commissioner of Internal Revenue for deficiencies in gift tax. Reviewing their petition, the tax court[1] found deficiencies of $185,572 for 1998 and $276,321 for 1999. *See **Senda v. Comm'r***, 2004 WL 1551275 (T.C. Memo. 2004-160). The Sendas appeal under Section 7482 of the Internal Revenue Code. This court affirms.

_____

[1]The Honorable Judge Mary Ann Cohen, United States Tax Court.

I.

In the spring of 1998, the Sendas created the Mark W. Senda Family Limited Partnership. Mark Senda – as trustee of his revocable living trust – was the general partner with a 10 percent interest, as well as a limited partner with a 89.8397 percent interest. Michele Senda owned a limited interest of 0.1303 percent. According to the partnership agreement, each of their three children had a limited interest of 0.01 percent – held in (an oral) trust with Mark Senda as trustee. The children reported partnership income/losses on their individual tax returns.

On December 28, 1998, in exchange for their interests, the Sendas transferred 28,500 shares of MCI WorldCom stock, then worth about $2 million, to the partnership. The children's trusts, according to Mark Senda, contributed oral accounts receivable (reported at $200) in exchange for their interests – which were unpaid at the time of trial. On their gift-tax return for 1998, the Sendas reported that on December 28, they gave all their limited interests equally to their three minor children.

By December 17, 1999, the Sendas formed a second partnership, Senda & Associates, L.P. Mark Senda's revocable trust was the general partner with a 1.0 percent interest, as well as a limited partner with a 97.97 percent interest. Michele Senda owned a 1.0 percent limited interest. Irrevocable (written) trusts for each child held limited interests of 0.01 percent each.

On December 20, 1999, in exchange for their interests, the Sendas transferred 18,477 shares of MCI WorldCom stock, then worth about $1.5 million, to this partnership. The children's trusts, according to Mark Senda, gave oral accounts receivable (reported at $148) in exchange for their interests – which were unpaid at the time of trial. On their gift-tax return for 1999, the Sendas reported that on

December 20, they gave a total of 53.7 percent limited interest in Senda & Associates, L.P., equally to the trusts for the three children.

The Sendas' essential claim is that they made gifts of partnership interests. The Commissioner says they made indirect gifts of stock. At stake is the value of the gifts. The Sendas value the partnership interests by multiplying the value of the stock by the percentage of interests transferred, and then discounting by (stipulated) lack-of-marketability and minority-status factors. The Commissioner values the gifts at the full undiscounted value of the stock.

## II.

The Internal Revenue Code taxes the transfer of property by gift, whether "direct or indirect." 26 U.S.C. §§ 2501(a)(1), 2511(a). The Code "is clear and admits of but one reasonable interpretation: transfers of property by gift, by whatever means effected, are subject to the federal gift tax." *Dickman v. Comm'r*, 465 U.S. 330, 334 (1984). "Thus, any transaction in which an interest in property is gratuitously passed or conferred upon another, regardless of the means or device employed, constitutes a gift subject to tax." **Treas. Reg. (26 C.F.R.) § 25.2511-1(c)(1).**

### A.

According to the Sendas, the tax court should have shifted the burden of proof to the Commissioner on the indirect-gift issue, under Tax Court Rule 142(a)(1). The Commissioner concedes he did not raise this issue in the notice of deficiency, but claims it is not a "new matter." This court reviews de novo whether an issue is a new matter in the tax court. *See* **Blodgett v. Comm'r**, 394 F.3d 1030, 1040 (8th Cir. 2005).

"A new position taken by the Commissioner is not necessarily a 'new matter' if it merely clarifies or develops the Commissioner's original determination without

requiring the presentation of different evidence, being inconsistent with the Commissioner's original determination, or increasing the amount of the deficiency." *Id.* Here, indirect-gift analysis did not require new evidence, did not increase the 1998 and 1999 deficiencies, and was consistent with the value determinations in the deficiency. Thus, the indirect-gift issue was not a new matter, and the burden of proof was on the Sendas. *See Clajon Gas Co. v. Comm'r*, 354 F.3d 786, 789 (8th Cir. 2004).

## B.

The tax court found that the Sendas "presented no reliable evidence that they contributed the stock to the partnerships before they transferred the partnership interests to the children." This sequence is critical, because a contribution of stock *after* the transfer of partnership interests is an indirect gift to the partners (to the extent of their proportionate interest in the partnership). *See Shepherd v. Comm'r*, 283 F.3d 1258, 1261 (11th Cir. 2002), *affirming Shepherd v. Comm'r*, 115 T.C. 376, 388 (2000); *cf.* **Treas. Reg. (26 C.F.R.) § 25.2511-1(h)(1)** (rule for corporations).

The Sendas attack the factual and credibility findings of the tax court. This court reviews tax court decisions in the same manner and to the same extent as decisions of the district court in civil actions tried without a jury. 26 U.S.C. § 7482(a)(1). Factual determinations are reviewed for clear error. *See Estate of Schuler v. Comm'r*, 282 F.3d 575, 578 (8th Cir. 2002). This court upholds factual findings unless "left with a definite and firm conviction" that the tax court committed a mistake. *Estate of Ford v. Comm'r*, 53 F.3d 924, 926-27 (8th Cir. 1995)(quoting *Estate of Plamer v. Comm'r*, 839 F.2d 420, 423 (8th Cir. 1988)). Findings of credibility are nearly unreviewable. *See Blodgett*, 394 F.3d at 1035.

The tax court's key findings are:

It is apparent from petitioner's evasive testimony and from the total record that petitioners were more concerned with ensuring that the beneficial ownership of the stock was transferred to the children in tax-advantaged form than they were with the formalities of FLPs. Indeed, petitioner, as general partner, did not maintain any books or records for the partnerships other than brokerage account statements and partnership tax returns. Those tax returns were prepared months after the transfers of the partnership interests. Thus, they are unreliable in deciding whether petitioners transferred the partnership interest to the children before or after they contributed the stock to the partnerships. The same is true of the certificates of ownership reflecting the transfers of the partnership interests, which were not prepared until at least several weeks after the transfers. The informality is not surprising, inasmuch as petitioners alone, individually, or on behalf of their minor children were united in purpose and acted without restraint by any adverse interest. As a result, however, petitioners have presented no reliable evidence that they contributed the stock to the partnerships before they transferred the partnership interests to the children. At best, the transactions were integrated (as asserted by respondent) and, in effect, simultaneous.

*Senda v. Comm'r*, T.C. Memo. 2004-160, p. 15.

The Sendas object to these findings, pointing to evidence that they contributed the stock before transferring the partnership interests. First, they rely on their gift-tax returns, the partnership's income-tax returns, and the partnership certificates of ownership. The tax court did not clearly err in ruling these after-the-fact documents unreliable. Second, the Sendas emphasize two letters faxed to tax advisors, one about each partnership, asking what percents of partnership interests should be gifted in order to obtain the best tax treatment. These letters are not conclusive. The first letter is dated the same day as the transfer of stock to the first partnership, and thus does not indicate any specific order of events. The second letter is dated two days after the second stock transfer, although the Sendas' return says they transferred the

-5-

partnership interests two days earlier, the same day as the stock transfer. Significantly, the testimony of Mark Senda – that his business practice is to execute documents and transactions "as of" a certain date – undercuts the reliability of the dates on the letters. On this record, the tax court did not clearly err in its factual and credibility findings.

## C.

In an alternative tack, the Sendas argue that it is "irrelevant" whether the stock transfer was before or after the gift of partnership interests. They say:

> If the Sendas had made their capital contributions after they made the transfers of their limited partnership interest, the contributions would still have been allocable to the capital accounts associated with the partnership interests retained by the Sendas. Therefore, it was impossible under the terms of the partnership agreements for the Sendas to transfer their capital accounts without transferring the corresponding partnership interests.

The Sendas believe this also distinguishes the *Shepherd* case – which the tax court follows – where the partnership agreement allocated additional contributions pro rata among the partners' accounts. *See* **Shepherd**, 115 T.C. at 380, 389; 382 F.3d at 1261.

The Sendas overlook the ultimate finding of the tax court. Immediately after concluding that they did not meet their burden of proving that the stock transfers preceded the gifts, the tax court finds: "At best, the transactions were integrated (as asserted by respondent) and, in effect, simultaneous." The tax court recognizes that even if the Sendas' contribution would have first been credited to their accounts, this formal extra step does not matter.

In some situations, formally distinct steps are considered as an integrated whole, rather than in isolation, so federal tax liability is based on a realistic view of the entire transaction. *See **Comm'r v. Clark***, 489 U.S. 726, 738 (1989). This step-transaction doctrine is "impliedly included in the gift tax statute itself." *See **Sather v. Comm'r,*** 251 F.3d 1168, 1174 (8th Cir. 2001). This court's very first case referencing the gift tax held that the events were "steps in one transaction." ***Oberwinder v. Comm'r***, 147 F.2d 255, 259 (8th Cir. 1945).

Whether several transactions should be considered integrated steps of a single transaction is a fact question which this court reviews for clear error, in the absence of a controlling statute, regulation, or constitutional question. *See **Sather,*** 251 F.3d at 1173; ***Dobson v. Comm'r***, 320 U.S. 489, 502 (1943). The general characterization of a transaction for tax purposes is a question of law, subject to de novo review. *See **IES Indus., Inc. v. United States,*** 253 F.3d 350, 351 (8th Cir. 2001)(*quoting **Frank Lyon Co. v. United States***, 435 U.S. 561, 581 n. 16 (1978)).

The key findings, quoted above, show that the transactions here were integrated and simultaneous. These findings are amply supported. For example, as to the first partnership, Mark Senda testified on cross-examination:

> Q. And, at that same time, certainly the same day, you transferred the partnership interests, limited partnership interests from yourself and Michele to the children, correct?
> A. Yes, sir.
>
> Q. And when did you do that? On December 28?
> A. When did I do that?
>
> Q. Yes, sir.

A. Well, keep in mind that these things have been weeks in the making. So the fact that they triggered at a particular day or on a particular day may or may not be relevant.

The fact that that happened during that day, I couldn't tell you if it happened at 1:00, 3:00 or 5:00. If that's what you're asking me.

Q. That was what I was asking you. The transfer of the limited partnership interests, how did that occur on December 28, 1998?

A. How did that occur? Tell me where you're going. I'm not sure.

....

Q. So how did you transfer it from yourself to the children?

A. How did I transfer? I'm not certain what the right, what you're looking for here.

Q. Did you just decide that today's the day I'm transferring the interest?

A. My wife and I, with counsel and advice, that happened to be the same day, yes, sir, that all occurred.

The tax court did not clearly err in finding that the Sendas' transfers were integrated steps in a single transaction. Moreover, the general characterization of the transaction is correct as a matter of law.

D.

The Sendas pose two other questions of law (or at least mixed questions of law and fact), which this court reviews de novo. *See Clajon Gas Co.*, 354 F.3d at 789. First, they claim that the tax court ignores Missouri law that an entity (here, the limited partnerships) may not be disregarded "merely because of technical

deficiencies in the documentation or timing of certain transactions," citing *Fairbanks v. Chambers*, 665 S.W.2d 33, 37 (Mo. App. 1984).

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." **Morgan v. Comm'r**, 309 U.S. 78, 80 (1940). This approach balances the legitimate and traditional interest of the State in creating and defining property interests, and the necessity for uniform administration of the Internal Revenue Code. **Aquilino v. United States**, 363 U.S. 509, 513 (1960).

The tax court does not violate these established rules in this case. It does not ignore the existence of the family limited partnerships, the transfers to and within them, or the capital provisions of the partnership agreements. To the contrary, the tax court recognizes these facts, and then applies federal law on indirect gifts and step transactions in order to determine how they are taxed.

Finally, the Sendas assert that in gift-tax cases, the step-transaction doctrine is limited to identifying the transferor or transferee. This assertion is refuted by this court's reciprocal-trust cases of *Sather* and *Schuler*: "The application of the reciprocal trust doctrine is not limited only to identifying the true transferor or transferee, but also applies to determining the nature of the property transferred." **Schuler**, 282 F.3d at 578, *citing* **Sather**, 251 F.3d at 1174. More generally as to issues beyond reciprocal trusts, such a limitation would contradict the expansive sweep of the gift-tax law itself, which taxes any "indirect" gift. *See* 26 U.S.C. 2511(a); **Dickman**, 465 U.S. at 335. "The terms 'property,' 'transfer,' 'gift,' and 'indirectly' are used in the broadest and most comprehensive sense." **Jewett v. Comm'r**, 455 U.S. 305, 309 (1982); **Smith v. Shaughnessy**, 318 U.S. 176, 180 (1943). In sum, the Sendas' proposed limitation would be contrary to the precedent of the Supreme Court, which calls the step-transaction doctrine "well-established"

and "expressly sanctioned."  *See* **Clark**, 489 U.S. at 738; *cf.* **Lannan v. Kelm**, 221 F.2d 725, 736 (8th Cir. 1955)("The idea that for purposes of taxation we are concerned with the substance and not the form appears to be well established, especially in regard to intra-family transactions").

## III.

The judgment of the tax court is affirmed.

_____