# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-3917

———————

Diane S. Blodgett,           *
                             *

        Appellant,        *

                             *    Appeal from the United States

      v.                  *    Tax Court.

                             *

Commissioner of Internal Revenue,    *

                             *

        Appellee.        *

———————

Submitted: October 22, 2004
Filed: January 12, 2005

———————

Before BYE, LAY, and GRUENDER, Circuit Judges.

———————

BYE, Circuit Judge.

Diane Blodgett, a special education teacher, appeals from a tax court determination in favor of the Internal Revenue Service. We affirm.

I

We adopt the facts as set forth in the tax court's opinion, T.C.M. 2003-212 (2003), and simply restate some critical facts so as to make understandable the legal issues presented herein. In the 1970's, Ms. Blodgett's ex-husband Michael Blodgett founded T.G. Morgan, Inc., a business engaged in the buying and selling of rare

coins. The enterprise began as a sole proprietorship, later incorporated, utilizing a subchapter S election designation for income tax purposes, in 1985. As of 1992, Mr. and Ms. Blodgett each owned 27.5 percent of the business. Their three children owned 15 percent each.

Mr. Blodgett operated the business similar to a ponzi scheme. By all accounts, it was successful and enabled the Blodgetts to lead a lavish lifestyle. As examples, the Blodgetts, personally or through their business entity, held rare coins and historical documents with a collective value of more than $20 million, a condominium and docking space in Key Largo, Florida, purchased for $583,379, a Mercedes 560 SL, a 23-foot Cutty Cabin Sunrunner boat and a Simbari oil painting worth approximately $85,000.

Eventually, the long arm of the law caught up with Mr. Blodgett as he was charged with and convicted of several counts of fraud. His wife was not charged with any criminal wrongdoing. In addition to the criminal troubles, the Federal Trade Commission (FTC) initiated a civil action against T.G. Morgan and Mr. Blodgett, alleging deceptive trade practices and seeking permanent injunctive relief and consumer redress. T.G. Morgan, Mr. Blodgett and the FTC reached a settlement which was memorialized in a consent order signed March 4, 1992. Diane Blodgett signed the consent order as a nonparty spouse.

The consent order provided for the creation of a "settlement estate" and a "litigation estate," to include assets transferred from T.G. Morgan and the Blodgetts. A receiver was appointed to liquidate the assets in both estates and disburse the money. The litigation estate was used to pay litigation expenses for the defense of actual or reasonably anticipated governmental enforcement actions against the Blodgetts. The settlement estate was used to pay claims of defrauded customers of the business. The litigation estate was established with $300,000, funded solely by virtue of the liquidation of a so-called Coin Fund. The remaining proceeds from the

liquidation of the Coin Fund were transferred to the settlement estate. The settlement estate also included the Florida property and the Simbari painting, among other assets.

After the onset of the FTC case but prior to the consent order, creditors of the business filed an involuntary bankruptcy petition against the business. On August 21, 1992, the district court ordered the receiver in the FTC case to turn over all assets held in the settlement estate to the bankruptcy trustee (turnover order). The turnover order specified those assets determined in the bankruptcy proceeding not to be the property of the T.G. Morgan bankruptcy estate to be returned to their rightful owners. After the turnover order, the Florida condominium and Simbari painting each became parts of the bankruptcy estate and were not returned to the settlement estate.

As part of the liquidation proceedings, the bankruptcy trustee prepared and filed T.G. Morgan's tax returns for the years 1990 through 1998. Diane Blodgett did not participate in the preparation of these returns. On the 1992 return, filed by the trustee in February 1999, T.G. Morgan reported an ordinary loss in the amount of $17,202. The trustee prepared and issued to the shareholders a notice indicating each respective share of the loss amount and the fact such loss was deductible only to the extent of shareholder basis in the corporation, which the trustee determined was zero.

The document at issue on appeal is Ms. Blodgett's 1998 personal federal income tax return prepared by her ex-husband from prison. It reported wage income of $45,788.24 and income tax withheld of $5,582.56. The return also included a $38,046,524 carryover business loss deduction. Such figure reportedly represented the amount described on the proof of claim filed by the FTC in the bankruptcy case against T.G. Morgan. The return claimed a refund of all of her withholdings for 1998. Ms. Blodgett attached a letter to her tax return explaining the large loss

carryovers stemmed from the loss of property arising out of the consent agreement she signed as a nonparty spouse.[1]

On February 15, 2000, the I.R.S. sent Ms. Blodgett a notice of deficiency disallowing the claimed deduction.  She then petitioned the tax court for a redetermination.  At trial, the tax court characterized the primary issue for decision as whether she was entitled to all or part of the $38,046,524 loss deduction claimed on her 1998 return as the carryover of a 1992 business loss.[2]  Ms. Blodgett also claimed the following specific items as deductible losses: (1) $733,500 for the theft loss of a pension fund; (2) $225,000 as carryforward legal expenses; (3) a $142,482 investment loss on a condominium and lot in Florida; (4) a $42,500 investment loss on a Simbari painting; (5) a $561,375 carryforward business or investment loss on rare coins; and (6) a $125,403 carryforward business or investment loss on historical documents.

The tax court entered a decision in favor of the I.R.S., finding Ms. Blodgett failed to meet her burden of proof on the issues of ownership, loss, value and deductibility of the items contributed to the settlement.  She subsequently filed the current appeal.  On appeal, she contends the tax court erred in not shifting the burden

---

[1]Ms. Blodgett claimed deductions on her 1994, 1995, 1996, and 1997 returns that were similar in amount and nature to the loss deduction claimed on the 1998 return. She claimed and received refunds of her annual withholdings of $736.36 in 1996 and $2,722.78 in 1997. The 1996 and 1997 returns also attached explanatory letters.  In the letter attached to the 1996 return, petitioner alleged that the FTC stole the pension plan funds worth $815,000 and claimed that the assets turned over to settle the FTC case "were still 'our' property when the FTC made hundreds of illegal sales in commercially unreasonable manner--while serving as fiduciary."

[2]At trial, petitioner stated that she was no longer claiming the entire amount of that deduction; yet, she reiterated that she was entitled to deduct losses carried forward from T.G. Morgan.

-4-

of proof to the Commissioner of Internal Revenue, pursuant to 26 U.S.C. § 7491, as to whether there was a loss; in failing to likewise shift the burden of proof when the Commissioner introduced new evidence on the eve of trial; and in treating the trustee's tax return as presumptively correct without further authentication.

## II

We apply different standards of review to different components of a tax court's decision. We review a tax court's factual determinations under a clearly erroneous standard. Clajon Gas Co. v. C.I.R., 354 F.3d 786, 789 (8th Cir. 2004). Under this standard, "[w]e will uphold the Tax Court's finding unless we are 'left with a definite and firm conviction' that the Tax Court has committed a mistake." Estate of Ford v. C.I.R., 53 F.3d 924, 926-27 (8th Cir. 1995) (quoting Estate of Palmer v. C.I.R., 839 F.2d 420, 423 (8th Cir. 1988)). When the tax court's fact finding is based on a credibility determination, such finding is nearly unreviewable. See Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985) (stating a fact finder's determination on credibility can virtually never be considered clearly erroneous). In contrast, a tax court's legal conclusions and mixed questions of law and fact are subject to *de novo* review. Clajon Gas, 354 F.3d at 789.

A.     Shifting Burden of Proof on Tax Loss

The question of whether a taxpayer produced evidence sufficient to shift the burden of proof to the I.R.S. under 26 U.S.C. § 7491 is a legal one which we review *de novo*. Estate of Mitchell v. C.I.R., 250 F.3d 696, 701 (9th Cir. 2001). We evaluate the sufficiency of the evidence under the applicable standard of review against a backdrop of each party's burden of proof. Limited, Inc. v. C.I.R., 286 F.3d 324, 331 (6th Cir. 2000). Generally, the I.R.S. determination on the existence of a tax deficiency is presumed correct; thus, the taxpayer generally bears the burden of proving entitlement to a claimed deduction by a preponderance of the evidence.

Griffin v. C.I.R., 315 F.3d 1017, 1021 (8th Cir. 2003). This burden, however, may shift to the I.R.S. to disprove entitlement to a claimed deduction if the taxpayer introduces "credible evidence" complete with the necessary substantiation and documentation sufficient to fulfill the requirements of § 7491.[3] Interex, Inc. v. C.I.R., 321 F.3d 55, 58 (1st Cir. 2003).

We begin with a discussion of credible evidence. In Griffin, we defined "credible evidence" for purposes of § 7491 as "the quality of evidence, which after critical analysis, the court would find sufficient upon which to base a decision on the issue *if no contrary evidence were submitted* (without regard to the judicial presumption of IRS correctness)." 315 F.3d at 1021. Ms. Blodgett contends the tax court ignored § 7491 by failing to shift the burden of disproving her loss to the

[3]Section 7491(a) states, in relevant part:

(**1**) **General rule**--If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

(**2**) **Limitations**--Paragraph (1) shall apply with respect to an issue only if--

(**A**) the taxpayer has complied with the requirements under this title to substantiate any item;

(**B**) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; and

(**C**) in the case of a partnership, corporation, or trust, the taxpayer is described in section 7430(c)(4)(A)(ii).

(**3**) **Coordination**--Paragraph (1) shall not apply to any issue if any other provision of this title provides for a specific burden of proof with respect to such issue.

Commissioner after she introduced uncontroverted testimony, which she alleges was thoroughly corroborated by documentary evidence, that, as part of the settlement agreement, she irrevocably lost millions of dollars in assets when she turned over the assets to the FTC receiver. Ms. Blodgett's argument, however, fails to the extent she relies on Griffin for the proposition any testimony offered by the taxpayer tending to support a claimed deduction is sufficient to shift the burden of proof to the I.R.S. While a tax court must consider the testimony as "if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness)," a tax court has the right in the first instance to reject the testimony as incredible. See Marcella v. C.I.R., 222 F.2d 878, 883 (8th Cir. 1955) (stating a tax court "is not compelled to believe evidence which to it seems improbable, or to accept as true uncorroborated evidence of interested witnesses even though uncontradicted"); cf. Willis v. State Farm Fire and Cas. Co., 219 F.3d 715, 720 (8th Cir. 2000) (stating "a jury is free to disbelieve any witness, even if the testimony is uncontradicted or unimpeached"). A fact finder may choose to disbelieve evidence on its face even without evidence to the contrary. See Steel v. Downs, 438 F.2d 310, 312 (8th Cir. 1971) (stating "[t]he trier of the facts is not required to accept the uncontradicted testimony of an uncorroborated interested party, although such testimony is not contradicted by other testimony."); cf. Anderson, 470 U.S. at 575 (highlighting a trial judge's ability to ". . .be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is being said."). This concept is not only fundamental since incredible testimony, axiomatically, cannot constitute credible evidence, but this concept is contained within the definition of credible evidence. Ms. Blodgett conveniently disregards the portion of the credible evidence definition requiring a tax court to conduct a "critical analysis" of the evidence. If a critical analysis requires nothing else, it requires a tax court to conduct a credibility determination before labeling evidence "credible." With this qualification on her interpretation of Griffin, we will now analyze each claimed deduction.

1.    Business Carryover Expenses

Ms. Blodgett claimed a deduction for a $38,046,524 net operating loss suffered by T.G. Morgan in 1992 stemming from the turnover of assets to the FTC. Sub-S corporation losses are generally deductible by its shareholders to the extent of the shareholder's basis. 26 U.S.C. § 1366(a) & (d)(1). As proof of the loss, she introduced evidence the FTC filed a $38 million proof of claim as creditor of T.G. Morgan in the bankruptcy proceeding. She also introduced the testimony of her husband who testified part of the $38 million turned over to the FTC were personal assets. The question before us is whether this evidence was "credible evidence" sufficient to shift the burden of proof to the I.R.S. Even though the deduction was a mere $45,788.24 out of the claimed $38 million loss, we find the evidence was not sufficient to support the deduction.

The testimony establishes the FTC made a claim, but it does not establish the claim was actually paid. Assuming the claim was paid, the loss would only be deductible to the extent of Ms. Blodgett's basis in the corporation. Oren v. C.I.R., 357 F.3d 854, 857 (8th Cir. 2004). Relying upon T.G. Morgan's 1992 tax return, the tax court concluded her basis in the corporation was zero. While she disputes the accuracy of the return and argues the personal assets turned over to the FTC as part of the $38 million settlement increased her basis in the corporation, we find the tax court did not clearly err in reaching its basis conclusion in light of the bankruptcy trustee's notice and the lack of certainty as to the ownership of the assets contributed to the settlement. However, even if we assume the claim was paid and further assume she had sufficient basis in the corporation, the deduction is only allowed if she did not already deduct the loss in a prior year. She did not introduce evidence in this regard. At a minimum, a taxpayer must produce credible evidence as to each material factual assertion necessary to support a claimed deduction before the burden shifts to the I.R.S. See Griffin, 315 F.3d at 1021 (defining credible evidence as the quality of evidence sufficient to support a favorable decision on an issue).

Furthermore, she failed to maintain and produce the proper records to substantiate her claim, thus she did not meet the burden shifting requirements. See 26 U.S.C. §§ 7491(2)(A) & (B).

2.      Theft Loss of Pension Fund

Ms. Blodgett claimed a deduction of $733,500 for the theft loss of a pension fund, which she alleged was stolen by the FTC and other governmental agencies and officials.[4] The only evidence this loss occurred as a result of theft was her testimony. She argues her testimony is sufficient to shift the burden of proof. Griffin, 315 F.3d at 1020-21 (reversing a tax court finding that the taxpayer's uncorroborated and self-serving testimony was not enough to shift the burden to the I.R.S.). If all she needed to show to support the deduction was evidence of theft, then she may be correct. However, in addition to evidence of an actual theft, theft losses are deductible only in the year discovered. 26 U.S.C. § 165(e). Therefore, she must have produced evidence of her discovering the loss in 1998, which she failed to do. The tax court found insufficient evidence to prove even the mere existence of a pension fund. The court also found incredible her contention government officials involved in the bankruptcy proceeding and civil action stole the money from the pension fund. Even if a pension fund did exist and it was stolen by government officials, she is not entitled to a deduction because the tax court found she would have discovered these happenings well before 1998.

---

[4]According to the tax court, T.G. Morgan had a defined benefit pension plan, the T.G. Morgan Defined Benefit Pension Plan (pension plan). However, the record is not complete with respect to the formation, administration, and records of the pension plan. Insofar as the record reveals, its activity was not reported to the Internal Revenue Service on Form 5500-EZ, Annual Return of One-Participant (Owners and Their Spouses) Retirement Plan. Ms. Blodgett introduced at trial an unfiled Form 5500-EZ relating to the pension plan.

### 3. Carryforward Legal Expenses

Ms. Blodgett claimed a deduction of $225,000 for carryforward legal expenses. Legal expenses incurred as an ordinary and necessary business expense are deductible, but legal expenses incurred as a personal expense are nondeductible. 26 U.S.C. § 162(a). It is unclear from the record what evidence, if any, she produced in support of the deduction for carryforward legal expenses, but the tax court found "she failed to prove that her costs, if any, for defending herself and Mr. Blodgett from civil and criminal liability connected with the business were other than nondeductible personal expenses." Furthermore, to the extent she could have shown a business purpose, her loss could only be deducted in proportion to her basis in the corporation. Oren, 357 F.3d at 857. As mentioned, she failed to produce convincing evidence showing her basis in the corporation.

### 4. Loss of Condominium

Ms. Blodgett testified to the purchase of a condominium in Florida for the purpose of renting it out and sustained a $142,482 investment loss when the property was transferred to the settlement estate and later the bankruptcy trustee. The Tax Code allows a deduction for a loss incurred in connection with a transaction conducted for profit, but does not allow a deduction for a personal, living or family expense. 26 U.S.C. § 165 (c)(2). Ms. Blodgett testified she and her husband bought the property as an investment. She argues her testimony is sufficient to shift the burden of proof. The tax court, however, found her testimony lacked credibility at trial. Incredible testimony is not sufficient to shift the burden of proof. Griffin, 315 F.3d at 1021. In any event, the tax court ultimately found the objective evidence, namely, the evidence of the Blodgetts' lack of expertise in the real estate business, lack of market analysis prior to purchase, and the failure to actually rent out the property, outweighed any incredible statements supporting the deduction. The tax

court concluded the Blodgetts purchased the property for personal, living and family purposes.

5.    Loss on Simbari Painting

Ms. Blodgett testified she purchased an $85,000 Simbari oil painting as an investment and claimed to suffer a $42,500 loss (one-half of its cost) when the painting was transferred to the settlement estate. The Tax Code allows a deduction for a loss incurred in connection with a transaction conducted for profit, but does not allow a deduction for a personal, living or family expense. 26 U.S.C. § 165 (c)(2). Her testimony indicated she bought the painting as an investment. She argues her testimony is sufficient to shift the burden of proof. The tax court's decision is unclear as to the credibility of her testimony in support of this specific deduction. The tax court, when necessary, clearly dismissed the credibility of her singular testimony in support of the other claimed deductions, but the manner in which this portion of the tax court's decision reads it only dismissed the credibility after considering the objective evidence to the contrary. In the light of the overall tone of the decision, this discrepancy may be inadvertent, but if Ms. Blodgett's testimony is credible, the burden of disproving entitlement to this deduction should have shifted to the I.R.S. Griffin, 315 F.3d at 1021 (defining credible evidence). However, regardless of which party bore the burden of proof, the overwhelming weight of evidence supported a finding for the I.R.S. The tax court found both Mr. and Ms. Blodgetts' lack of expertise in art, their lack of history in art investments and their failure to obtain a market analysis of the painting did not support her claim the painting was purchased as an investment. The tax court found, based on Mr. Blodgett's testimony, that personal pleasure was the primary reason for owning the painting. Therefore, even if the tax court erred in not shifting the burden of proof, any such error was harmless, as will be explained in subsection 7 below.

6.      Loss on Rare Coins and Historical Documents

Ms. Blodgett testified she suffered deductible carryforward business or investment losses on $561,375 in rare coins and $125,403 in historical documents. The tax court, however, found her self-serving testimony incredible. She produced no other specific evidence regarding the ownership, value and transfer of the rare coins and historical documents claimed as carryforward business or investment losses. Accordingly, the tax court found she did not meet her burden of proof with respect to the ownership, value, and transfer of the rare coins and historical documents. Considerable evidence existed showing the Blodgetts did not own the coins and documents, rather T.G. Morgan and its customers did. Moreover, if she claimed the losses as theft losses, such are only deductible in the year discovered, and she did not show when she discovered them. 26 U.S.C. § 165(e).

7.      Significance of the Burden Shift

According to Ms. Blodgett, any failure to shift the burden of proof would require us to reverse the decision of the tax court and remand the case with instructions to retry it with the burden assigned to the I.R.S. Once again, she relies on Griffin. See 315 F.3d at 1022 (reversing and remanding for failure to shift the burden of proof). In Griffin, like the instant case, the tax court declined to shift the burden of proof to the I.R.S. under § 7491 because the taxpayer's "uncorroborated and self-serving testimony was not enough to overcome the clear evidence of non-deductibility." Id. at 1021. On appeal, the taxpayer claimed he produced sufficient "credible evidence" within the meaning of § 7491 to shift the burden of proving the issue of non-deductibility to the I.R.S. Id. at 1020-21. The court agreed. Upon reviewing the taxpayer's testimony in absence of any evidence or presumptions to the contrary, the court determined the taxpayer produced enough credible evidence to support the claimed deductions. Id. The court remanded the case to the tax court for further proceedings despite the tax court's statement in its opinion the burden of

proof was irrelevant because the weight of the evidence supported a finding for the I.R.S. Id. at 1022. Rebuking the tax court, the court declared "it is not sufficient to summarily conclude that the outcome is the same regardless of who bears the burden of proof; if that were the case, § 7491 would have no meaning." Id.

In contrast to Griffin, another panel of this Court has found a tax court does not commit error in not addressing the burden of proof because "'[t]he shifting of the evidentiary burden of preponderance is of practical consequence only in the rare event of an evidentiary tie.'" Polack v. C.I.R., 366 F.3d 608, 613 (8th Cir. 2004) (quoting Cigaran v. Heston, 159 F.3d 355, 357 (8th Cir. 1998)). While the Polack panel addressed the burden shift in the context of a new matter rather than under § 7491, id., the significance of a burden shift is of general application. The circumstances of Griffin and Polack are remarkably similar in that the tax court in both cases did not decide the burden of proof question because the weight of the evidence supported a finding for the I.R.S. Compare Griffin, 315 F.3d at 1020, with Polack, 366 F.3d at 613. We are thus faced with an apparent conflict in precedents on the significance of the shifting burden of proof.

"When faced with conflicting precedents we are free to choose which line of cases to follow." Graham v. Contract Transp., Inc., 220 F.3d 910, 914 (8th Cir. 2000). We choose to follow the guidance of Polack. There is a simple reason for our choice. In a situation in which both parties have satisfied their burden of production by offering some evidence, then the party supported by the weight of the evidence will prevail regardless of which party bore the burden of persuasion, proof or preponderance. See Philip N. Jones, The Eighth Circuit Weighs In on the Burden of Proof–Will It Change the Outcome After All?, 98 J. Tax'n 226, 230 (2003). Therefore, a shift in the burden of preponderance has real significance only in the rare event of an evidentiary tie. Id. Here, the record is clear, if the tax court did err in failing to shift the burden of proof, any error was harmless because the weight of the evidence supported a decision for the Commissioner.

-13-

B.    <u>Shifting Burden of Proof on New Evidence</u>

Ms. Blodgett claims the tax court erred by not shifting the burden of proof to the I.R.S. on an alleged new issue on the eve of trial. Tax Court Rule 142 states, "[t]he burden of proof shall be upon the [taxpayer], . . . except that, in respect of any new matter, . . . it shall be upon the [Commissioner]." A new position taken by the Commissioner is not necessarily a "new matter" if it merely clarifies or develops the Commissioner's original determination without requiring the presentation of different evidence, being inconsistent with the Commissioner's original determination, or increasing the amount of the deficiency. <u>Estate of Kanter v. C.I.R.</u>, 337 F.3d 833, 851 (7th Cir. 2003).

We review *de novo* the question of whether the alleged new issue is considered a "new matter" for Rule 142 burden shifting purposes. <u>Id.</u> The asserted "new matter" involves the 1992 tax return of the T.G. Morgan bankruptcy estate, discovered and disclosed five days before trial, which allegedly uncovered evidence there was insufficient basis to support the claimed deductions. However, the discovery of the tax return and the I.R.S.'s subsequent reliance on the tax return does not constitute a "new matter." In its first trial memorandum fourteen months before trial, the I.R.S. alleged Ms. Blodgett did not have sufficient basis in the corporation to support the deduction. The discovery of the tax return only supplements the Commissioner's original allegation. Furthermore, the discovery of the tax return did not increase the amount of the deficiency, but was merely evidence tending to disprove her entitlement to the deduction. Thus, the matter was not new and the tax court did not err by failing to shift the burden of proof.

C.    <u>Admission of Trustee's Tax Return</u>

Finally, Ms. Blodgett argues the contents of the tax return prepared by the trustee represent inadmissible hearsay; thus, the tax court's treatment of the return

-14-

as presumptively correct was reversible error. A tax return is generally considered inadmissible hearsay with the exception that the return may constitute an admission by the taxpayer or someone on the taxpayer's behalf. Greenbaum v. United States, 80 F.2d 113, 125 (9th Cir. 1935). We express no opinion on the possible hearsay nature of the return, but note she failed to raise this hearsay objection at trial. An argument not raised at trial cannot be raised for the first time on appeal "unless the obvious result would be a plain miscarriage of justice." United States v. Gutierrez, 130 F.3d 330, 332 (8th Cir. 1997) (plain error review) (quoting Davis v. Wyrick, 766 F.2d 1197, 1204 (8th Cir. 1985)). Ms. Blodgett, however, not only failed to raise a hearsay objection at trial, she stipulated to the authenticity and admissibility of the return. Although she did not stipulate to the return's accuracy, relevancy or materiality, by stipulating to the return's admissibility without further reservation she waived any hearsay objection and thus forfeited any right to appellate plain error review. See United States v. Olano, 507 U.S. 725, 732-33 (1991) (finding an intentional relinquishment of a right extinguishes plain error review); United States v. Tulk, 171 F.3d 596, 600 (8th Cir. 1999) (finding plain error review of the trial court's admission of a prior misdemeanor conviction was precluded because of the defendant's deliberate waiver).

## III

We affirm the judgment of the tax court.

_____

-15-