# United States Court of Appeals
### For the Eighth Circuit
_____

No. 21-1996
_____

Aspro, Inc.

*Appellant*

v.

Commissioner of Internal Revenue

*Appellee*
_____

United States Tax Court
_____

Submitted: December 14, 2021
Filed: April 26, 2022
_____

Before SMITH, Chief Judge, GRUENDER and KOBES, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Aspro, Inc., an asphalt-paving company, claimed tax deductions for management fees paid to its shareholders. The tax court affirmed the Commissioner's denial of the claimed deductions and granted the Commissioner's motion *in limine* to exclude Aspro's proffered expert witness testimony.[1] Aspro appeals, and we affirm.

---

[1]The Honorable Cary Douglas Pugh, United States Tax Court.

## I.

Aspro, Inc. is an asphalt-paving company in Waterloo, Iowa. It is incorporated under Iowa law and treated as a subchapter C corporation for federal income-tax purposes. Between 2012 and 2014, the relevant years, Aspro stock was held by: Milton Dakovich, the president of Aspro; Jackson Enterprises Corp.; and Manatt's Enterprises, Ltd. Aspro has not paid dividends since the 1970s but, except for one year,[2] has paid its shareholders "management fees" for at least twenty years. In addition to receiving management fees, Dakovich received a salary, director fees, and bonuses for each of the relevant years. There were no written agreements between Aspro and its three shareholders regarding fees paid for management services, nor was there an employment contract between Aspro and Dakovich. Aspro claimed deductions on its tax returns for management fees for tax years 2012 through 2014. The Commissioner denied these deductions on the ground that Aspro failed to establish that it had incurred or paid the management fees for ordinary and necessary business purposes. At the resulting tax-court proceeding, each party proffered expert witnesses. The tax court excluded the testimony of Aspro's experts and sustained the Commissioner's decision denying Aspro's claimed deductions on the ground that the fees were not paid as compensation for services but were instead disguised distributions of corporate earnings. Aspro appeals.

## II.

We begin with Aspro's claim that the tax court abused its discretion in excluding the testimony of its experts, Gale Peterson, Jr. and William Kenedy. Peterson is a contractor in the highway-construction industry, and Kenedy is a certified public accountant who specializes in business valuation. They each opined that the management fees were paid for valuable services that were actually performed. We review the tax court's decision to exclude expert testimony for an

---

[2]The exception is 2010, the year Aspro invested $4 million to buy a new asphalt plant. Because of this, "in order to help Aspro with her cash flow," no management fees were paid.

abuse of discretion. *See Polack v. Comm'r*, 366 F.3d 608, 612 (8th Cir. 2004). Expert testimony is admissible only when the expert's specialized knowledge "help[s] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The expert's specialized knowledge must be "based on sufficient facts or data," be "the product of reliable principles and methods," and demonstrate that "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). "Speculative testimony should not be admitted." *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 448 (8th Cir. 2010).

The tax court did not abuse its discretion in excluding the testimony of Peterson. His expert testimony would not help the trier of fact understand the evidence or determine a fact in issue. *See* Fed. R. Evid. 702(a). The tax court correctly found that Peterson's "report does not offer an opinion as to the value of the various services at issue in this case nor does he apply scientific principles and methods." Instead, as the tax court found, Peterson relied only on his personal "experience working for Aspro and his knowledge of [the] shareholders' reputation in the industry[] [in concluding] that the services [the shareholders] provided to [Aspro] were valuable." This does not demonstrate that Peterson "employ[ed] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The tax court did not abuse its discretion when it excluded Peterson's testimony. *See United States v. Strong*, 826 F.3d 1109, 1115 (8th Cir. 2016) (holding that "expert-witness testimony was properly excluded" because "it was not helpful as required by Rule 702").

Nor did the tax court abuse its discretion in excluding the testimony of Kenedy. As the tax court noted, Kenedy did not "articulate what principles and methods he used, if any, to conclude that 'valuable services' were provided." We agree with the tax court that Kenedy's report "merely summarizes the facts in a light favorable to [Aspro], advocates for [Aspro's] position, criticizes [the Commissioner's] position, and makes statements regarding the law." Revealingly, Kenedy admitted that his findings were "[b]ased on [a] lack of documentation and

lack of a scientific method to assess the value" of the services. As the tax court suggests, this is an indication that his conclusions are based on personal belief rather than an expert analysis. *See Long v. Cottrell, Inc.*, 265 F.3d 663, 669 (8th Cir. 2001). Therefore, the tax court did not abuse its discretion in excluding Kenedy's testimony. *See Ackerman v. U-Park, Inc.*, 951 F.3d 929, 933 (8th Cir. 2020) ("In the absence of any record evidence that [the expert] used reliable principles and methods or applied them reasonably to the facts of this case to form his opinion . . . [, t]he district court did not abuse its considerable discretion in excluding [the] expert opinion.").

## III.

Next, we consider Aspro's challenge to the tax court's holding that none of the management fees paid by Aspro was deductible because they were instead disguised distributions of profits. *See United States v. Ellefsen*, 655 F.3d 769, 779 (8th Cir. 2011) (explaining that distributions of profits are not deductible). Whether payments made to shareholders are distributions of profits rather than compensation for services is a factual determination. *Heil Beauty Supplies, Inc. v. Comm'r*, 199 F.2d 193, 194-95 (8th Cir. 1952). We review the tax court's factual determinations for clear error and "must affirm unless left with a conviction that the tax court has committed a mistake." *Keating v. Comm'r*, 544 F.3d 900, 903 (8th Cir. 2008). We consider all the facts and circumstances when determining whether the compensation paid to a corporation's shareholders is actually a distribution of profits. *See Heil Beauty Supplies*, 199 F.2d at 195; *Charles Schneider & Co. v. Comm'r*, 500 F.2d 148, 151 (8th Cir. 1974). Aspro bore the burden of proving its entitlement to the deductions. *See* T.C.R. 142(a)(1).

Corporations must pay federal income tax on their taxable income, 26 I.R.C. § 11(a), which is gross income less allowable deductions, § 63(a). Under § 162(a)(1), deductions are allowed for expenses that are "ordinary and necessary" in carrying on a trade or business, including "reasonable allowance for salaries or other compensation for personal services actually rendered." "Ordinary has the connotation of normal, usual, or customary," and describes expenses arising from

-4-

transactions "of common or frequent occurrence in the type of business involved." *Deputy v. du Pont*, 308 U.S. 488, 495 (1940). Necessary means appropriate and helpful to the development of the business. *See Comm'r v. Heininger*, 320 U.S. 467, 471 (1943); *Welch v. Helvering*, 290 U.S. 111, 113 (1933).

"As the language of § 162(a)(1) suggests, a deduction may be made if salary is both (1) 'reasonable' and (2) 'in fact payments purely for services.'" *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1018 (8th Cir. 2012) (quoting Treas. Reg. § 1.162–7(a)); *see also Wy'East Color Inc. v. Comm'r*, 71 T.C.M. (CCH) 2501, 1996 WL 119492, at \*6 (1996) ("A taxpayer may deduct payments for management services under section 162 if the payments are for services actually rendered and are reasonable in amount."). "Usually, courts only need to examine the first prong," although "in the rare case where there is evidence that an otherwise reasonable compensation payment contains a disguised dividend, the inquiry may expand into compensatory intent apart from reasonableness." *David E. Watson*, 668 F.3d. at 1018 (brackets omitted). However, "[t]he inquiry into reasonableness is a broad one and will, in effect, subsume the inquiry into compensatory intent in most cases." *Id*. In general, reasonable compensation is limited to "such amount as would ordinarily be paid for like services by like enterprises under like circumstances." Treas. Reg. § 1.162-7(b)(3); *see also Home Interiors & Gifts, Inc. v. Comm'r*, 73 T.C. 1142, 1155-56 (1980).

"[C]orporations are not allowed a deduction for dividends paid to the shareholders," *Ellefsen*, 655 F.3d at 779, including distributions that are disguised as compensation. Treas. Reg. § 1.162-7(b)(1); *Charles Schneider*, 500 F.2d at 152-53. Compensation paid by the corporation to shareholders is closely scrutinized to make sure the payments are not disguised distributions. *Heil Beauty Supplies*, 199 F.2d at 194 ("Any payment arrangement between a corporation and a stockholder . . . is always subject to close scrutiny for income tax purposes, so that deduction will not be made, as purported salary, rental or the like, of that which is in the realities of the situation an actual distribution of profits.").

## A.

Here, even though Aspro argued that at least a portion of the management fees it paid were reasonable, we conclude that the tax court did not clearly err in finding that Aspro failed to meet its burden to show that any of the management fees paid to Jackson Enterprises Corp. and Manatt's Enterprises, Ltd. were reasonable. *See* T.C.R. 142(a)(1); *Home Interiors*, 73 T.C. at 1155-56. Aspro did not present evidence showing what "like enterprises under like circumstances" would ordinarily pay for like management services. *See* Treas. Reg. § 1.162-7(b)(3). It also did not quantify the value of the management services provided, nor did it show that similar companies would pay that amount for similar services. Contrary to Aspro's assertion, the Commissioner's expert Ken Nunes did not concede that "Jackson Enterprises and Manatt's Enterprises provided valuable services to Aspro to support Aspro's management fee payments." Nunes's conclusion that the services had some value was based upon testimony claiming that Jackson Enterprises and Manatt's Enterprises actually provided services to Aspro; he conducted no analysis on whether the services were actually provided. As the tax court noted, Aspro produced no written management-services agreement or other documentation of a service relationship between Aspro and either entity, no evidence of how Aspro determined the amount of the management fees, and no evidence that either entity billed Aspro or sent invoices for any services performed for Aspro. *See ASAT, Inc., v. Comm'r*, 108 T.C. 147 (1997) (holding that the taxpayer was not entitled to deduct consulting fees where there were no written agreements, no documentation providing how the management fees were calculated, and billing invoices containing almost no details); *Fuhrman v. Comm'r*, 102 T.C.M. (CCH) 347 2011-236, 2011 WL 4502290, at \*2-3 (same).[3]

---

[3]Although closely held companies "often act informally, with decisions not being documented in writing," *see Int'l Cap. Holding Corp. v. Comm'r*, 83 T.C.M. (CCH) 1586, 2002 WL 826553, at \*10 (2002), taxpayers claiming deductions should keep records "sufficient to establish" whether such person is liable for a deduction, *see* Treas. Reg. § 1.6001-1(a); I.R.C. § 6001; *Erickson v. Comm'r*, 937 F.2d 1548, 1552 (10th Cir. 1991) ("It is well established that taxpayers are required to keep

Further, we agree with the tax court that the management fees paid by Aspro to Jackson Enterprises Corp. and Manatt's Enterprises, Ltd. were not purely for services rendered and were instead disguised distributions of profits. *See David E. Watson*, 668 F.3d. at 1019. Aspro has made no dividend distributions since the 1970s but has paid management fees every year but one for twenty years. *See Paul E. Kummer Realty Co. v. Comm'r*, 511 F.2d 313, 315 (8th Cir. 1975) ("[T]he absence of dividends to stockholders out of available profits justifies an inference that some of the purported compensation really represented a distribution of profits as dividends."); *Charles Schneider*, 500 F.2d at 153 ("Perhaps most important [in identifying disguised distributions] is the fact that no dividends were ever paid by any of these companies during [this time], even though they enjoyed consistent profits and immense success in the industry."). And Aspro has also paid management fees in amounts roughly proportional to the ownership interests of the stockholders. Jackson Enterprises Corp. and Manatt's Enterprises, Ltd. each owned forty percent of Aspro's stock, and each received forty-three percent of the total management fees paid in 2012, forty-six percent in 2013, and forty-four percent in 2014. *See Paul E. Kummer*, 511 F.2d at 316 (suggesting that payments to shareholders that were "almost identical" to their ownership interest indicated disguised distributions); Treas. Reg. § 1.162-7(b)(1) (stating that a disguised distribution is likely where "excessive payments correspond or bear a close relationship" to ownership interests); *RTS Inv. Corp. v. Comm'r*, 53 T.C.M. (CCH) 171, *aff'd*, 877 F.2d 647 (8th Cir. 1989) (per curiam). The district court correctly found that Aspro had a "process of setting management fees [that] was unstructured and had little if any relation to the services performed" and "had relatively little taxable income after deducting the management fees," and Aspro does not dispute that it paid the management fees as lump sums at the end of the tax year even though many of the services that Aspro claims justified the management fees were performed throughout the year. *See Nor-Cal Adjusters v. Comm'r*, 503 F.2d 359, 362-63 (9th Cir. 1974) (affirming in a disguised-distribution context the tax court's

adequate records or books from which their correct tax liability may be determined.").

reliance on factors including an unstructured process of setting shareholder compensation, consistently negligible taxable income, and lump-sum payments to shareholders). Therefore, the tax court did not clearly err in concluding that the management fees paid to Jackson Enterprises Corp. and Manatt's Enterprises, Ltd. were nondeductible because Aspro failed to carry its burden of showing that the fees were reasonable and purely for services.

B.

Next we turn to whether the management fees paid by Aspro to Dakovich were deductible, which requires that the fees be reasonable and in fact payments purely for services.[4] *See David E. Watson*, 668 F.3d at 1018. We conclude that the tax court did not clearly err in finding that Aspro failed to meet its burden to show that the management fees paid to Dakovich "would ordinarily be paid for like services by like enterprises under like circumstances." *See* Treas. Reg. § 1.162-7(b)(3); *Home Interiors*, 73 T.C. at 1155-56. Aspro did not present evidence showing what similar companies under like circumstances would pay as management fees (over and above salary and bonuses) to an employee like Dakovich for the same type of management services. It also did not quantify the value of the management services he provided, nor did it show that like enterprises would pay that amount for them. In fact, the Commissioner's expert said the exact opposite. Nunes, an expert in valuing compensation arrangements, reviewed deposition transcripts about the services Dakovich provided to Aspro and determined the amount of reasonable compensation that a comparable enterprise would have to pay in the marketplace for the services described in the depositions. He concluded that Dakovich's salary and bonus exceeded the industry average and median by a substantial margin and that management fees in addition to the salary and bonus

---

[4]Aspro also paid Dakovich a salary, director fees, and bonuses in the relevant years. Only the deductibility of the management fees is at issue here.

were not reasonable.[5] When Nunes added Dakovich's excess compensation per year to his management fees, his share of the total management fees over the three years at issue was twenty-two percent, closely aligning with his twenty-percent ownership interest in Aspro; the other two shareholders each received thirty-nine percent, which closely aligned with their approximately forty-percent-each ownership interest in Aspro.

To determine whether compensation paid to a shareholder-employee is reasonable, courts consider factors enumerated in *Charles Schneider*, 500 F.2d at 151-52.[6] No single factor is dispositive; rather, the court is to base its decision on a careful consideration of applicable factors in light of the relevant facts. *See Mayson Mfg. Co. v. Comm'r*, 178 F.2d 115, 119 (6th Cir. 1949). Because the factors in isolation offer insufficient guidance on their application, we view them in the context of the list as a whole. Factors discussed in *Charles Schneider* strengthen our conclusion that the tax court did not clearly err, including "the absence of profits

---

[5]Aspro argues that Dakovich's compensation should be calculated as an estimate of his annual hours multiplied by the Commissioner's "concession" that Dakovich's time was worth $200 per hour. However, Aspro's argument misinterprets Nunes's testimony. The $200-per-hour figure represents the market rate a company would have to pay a professional firm to purchase equivalent senior level services. It includes direct compensation and benefits for the executive; the overhead costs of the firm, such as its costs of recruiting temporary staff; and its profits. Because of this, the figure includes a fifty-eight percent markup from what Nunes considered reasonable compensation for a senior-level professional comparable to Dakovich. Nunes testified that if Aspro planned to hire a similar person directly as an employee, which Dakovich was, the compensation paid would be $128 per hour.

[6]Contrary to Aspro's argument, the tax court properly did not consider these factors with regard to the management fees paid to Jackson Enterprises Corp. and Manatt's Enterprises, Ltd. because the factors apply to the reasonableness of an employee's compensation. *Charles Schneider*, 500 F.2d at 151-52. We have never applied the *Charles Schneider* factors to a nonemployee. *See, e.g., David E. Watson*, 668 F.3d at 1016-1017; *Paul E. Kummer*, 511 F.2d at 314-15; *RTS Inv. Corp.*, 877 F.2d at 348-49.

paid back to the shareholders as dividends"; "the nature, extent and scope of the employee's work"; and "a most significant factor," "the prevailing rates of compensation for comparable positions in comparable concerns." *See Charles Schneider*, 500 F.2d at 152-54.

Aspro has not paid any dividends to stockholders since the 1970s, but regularly pays management fees. This "justifies an inference that . . . the purported compensation really represents a distribution of profits." *See id.* at 153. To the extent that it exists in the record, Aspro's explanation is vague as to the "nature, extent and scope" of Dakovich's work for which he earned management fees, as opposed to the work he performed to earn his salary and bonus. *See id.* at 152. Explanations for why Dakovich earned the management fees included that it was "to compensate [him] for a job well done, basically" and that he is an "influential contractor" in the industry. A director of Aspro during the relevant time period was not "aware of a separation of duties that would relate [Dakovich's] salary versus management fees." In fact, not even Dakovich was able to explain what he did to earn the management fees. As stated above, Nunes concluded that Dakovich's compensation exceeded the prevailing rates of compensation paid to those in similar positions in comparable companies within the same industry. True, as the tax court acknowledged, Dakovich's qualifications (decades of experience, wide-ranging management duties, long hours worked) may have weighed in favor of the reasonableness of his compensation. *See Wagner Constr., Inc. v. Comm'r*, T.C.M. (RIA) 2001-160, 2001 WL 739234, at *22 (2001) (stating that an employee's superior qualifications may justify high compensation for his services). Nonetheless, in light of the countervailing factors, we conclude that the tax court did not clearly err in finding that Aspro had not met its burden of showing that management fees paid to Dakovich were reasonable.

Furthermore, the payments made to Dakovich were a disguised distribution and were not purely for services. *See David E. Watson*, 668 F.3d. at 1019. As with Jackson Enterprises Corp. and Manatt's Enterprises, Ltd., Aspro paid the management fees as lump sums at the end of the tax year even though the purported

services were performed throughout the year, had an unstructured process of setting the management fees that did not relate to the services performed, and had a relatively small amount of taxable income after deducting the management fees. *See Nor-Cal Adjusters*, 503 F.2d at 362-63. Therefore, the tax court did not clearly err in finding that Aspro failed to carry its burden of showing that the management fees were reasonable and purely for services actually performed.

## IV.

For the foregoing reasons, we affirm the judgment of the tax court.

_____