T.C. Memo. 2010-106

UNITED STATES TAX COURT

SUZANNE J. PIERRE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 753-07.                    Filed May 13, 2010.

<u>Kathryn Keneally</u> and <u>Meryl G. Finkelstein</u>, for petitioner.

<u>Lydia A. Branche</u>, for respondent.


SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $1,130,216[1]
deficiency for 2000 and a $24,969 deficiency for 2001 in

_____

[*]This opinion supplements our prior opinion, <u>Pierre v.
Commissioner</u>, 133 T.C. __ (2009).

[1]All monetary values are rounded to the nearest dollar,
unless otherwise indicated.

petitioner's Federal gift tax and generation-skipping transfer (GST) tax.

The Court bifurcated the issues in this case, and we addressed a legal issue of first impression in an earlier Court-reviewed opinion. Pierre v. Commissioner, 133 T.C. __ (2009) (Pierre I). In Pierre I the Court held that petitioner's single-member LLC, Pierre Family, LLC,[2] is not disregarded for gift tax valuation purposes under the "check-the-box" regulations of sections 301.7701-1 through 301.7701-3, Proced. & Admin. Regs. Accordingly, a transfer by petitioner of an interest in her single-member LLC is treated as such and subject to discounts for lack of control and marketability, rather than as the transfer of a proportionate share of the underlying assets owned by the LLC.[3]

After our decision in Pierre I and concessions,[4] we must still decide two issues. We first decide whether the step transaction doctrine applies to collapse petitioner's gift and sale transfers into transfers of two 50-percent interests in

---

[2]We refer to Pierre Family, LLC as Pierre LLC.

[3]As a result of the holding, we did not find that petitioner made indirect gifts of Pierre LLC assets under the analysis of Senda v. Commissioner, 433 F.3d 1044 (8th Cir. 2006), affg. T.C. Memo. 2004-160, and Shepherd v. Commissioner, 115 T.C. 376 (2000), affd. 283 F.3d 1258 (11th Cir. 2002).

[4]Respondent conceded that petitioner is not liable for a late-filing addition to tax under sec. 6651(a)(1) or an accuracy-related penalty under sec. 6662(a). All section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Pierre LLC.  We hold that it does.  We then determine whether the lack of control and marketability discounts petitioner reported should be reduced.  Respondent focused on the legal issue decided in Pierre I rather than on providing evidence concerning the appropriate discounts.  Our job is to weigh the evidence before us.  Accordingly, we find that there should be a slight reduction in the lack of control discount and no reduction in the discount for lack of marketability.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference.  We also incorporate the findings in Pierre I for purposes of this opinion.  We repeat here only the facts necessary to understand the discussion that follows, and we supplement those facts to address the remaining issues. Petitioner resided in New York at the time she filed the petition.

The Pierre Family

Petitioner was born in France.  Her first marriage ended quickly in divorce.  She left her 9-month old son Jacques with his grandparents in Brittany and began to look for work. Petitioner came to the United States in 1948 and eventually married Dr. Jules Pierre.  She rarely saw Jacques until he moved to the United States as a young man.

Dr. Pierre used Richard Mesirow (Mr. Mesirow) of Mesirow Financial to handle his financial matters. He and petitioner trusted Mr. Mesirow, and petitioner continued to work with him after Dr. Pierre died.

Petitioner had been a widow for many years when she received a $10 million cash gift from a wealthy friend in 2000. She, being 85, was concerned with both the income and estate tax implications of this substantial gift, which increased her net worth from approximately $2 million to $12 million. Petitioner turned to Mr. Mesirow for financial advice. He assisted petitioner in forming a plan to meet her own income needs and the needs of her only son and granddaughter.

Petitioner wanted to provide for her son and granddaughter without eroding her family's wealth with estate and gift taxes. She had previously provided occasional financial assistance to her son Jacques, a restaurateur. Petitioner also provided some financial support for the care of Jacques' only daughter Kati Despretz, petitioner's sole granddaughter.

Mr. Mesirow prepared an investment strategy memorandum reflecting petitioner's tax concerns and financial goals. Petitioner wanted to have an annual tax-free income. They arranged for her annual tax-free income to be $300,000, of which $180,000 was to meet her personal expenses and $120,000 was to be split evenly between Jacques and Kati. Accordingly, Mr. Mesirow

suggested that petitioner invest $8 million in New York municipal bonds.

Mr. Mesirow also advised petitioner to invest the remaining $4.25 million, which she wished to give Jacques and Kati, in stocks, mutual funds, and other marketable securities. He suggested that she create a family limited partnership to enable her to transfer $4.25 million of cash and marketable securities to Jacques and Kati. Mr. Mesirow worked with petitioner's estate attorneys, John Reiner of Reiner, Reiner, & Reiner LLP and Philip J. Michaels of Fulbright & Jaworski LLP, to develop a plan where petitioner would transfer the $4.25 million of cash and marketable securities to an entity so that the gifts would be subject to valuation discounts for transfer tax purposes.

Petitioner's first step was to organize the single-member Pierre Family, LLC (Pierre LLC) on July 13, 2000. Petitioner then created the Jacques Despretz 2000 Trust (J Trust) and the Kati Despretz 2000 Trust (K Trust) (collectively, the trusts) on July 24, 2000. Mr. Reiner was named a co-trustee of both trusts, and Jacques and Kati were named co-trustees of their respective trusts.

Petitioner then transferred the $4.25 million of cash and marketable securities to Pierre LLC on September 15, 2000. As planned, petitioner maintained approximately $8 million in fixed income assets outside Pierre LLC to generate tax-free income.

Petitioner then transferred her entire interest in Pierre LLC to the trusts 12 days after funding the LLC. Each trust received a 50-percent interest in Pierre LLC.

James F. Shuey of James F. Shuey & Associates performed an appraisal of Pierre LLC. Mr. Shuey valued a 1-percent nonmanaging interest in Pierre LLC at $26,965. He discounted the value of Pierre LLC's $4.25 million of cash and marketable securities by 10 percent for lack of control and 30 percent for lack of marketability for a 36.55-percent cumulative discount. After considering her then available applicable credit amount and GST tax exemption, petitioner and her advisers determined that she could make a gift of a 9.5-percent membership interest in Pierre LLC to each of the trusts (the gift transactions) without triggering gift taxes. She also sold each of the trusts a 40.5-percent membership interest in exchange for a secured promissory note (the sale transactions) on September 27, 2000 (date of the transfers).

The notes each had a face amount of $1,092,133 consistent with Mr. Shuey's appraisal. The notes bore interest at 6.09 percent annually, payable in 10 annual installments, and were secured by the respective 40.5-percent membership interests in Pierre LLC. Pierre LLC made distributions to the trusts so that the trusts could make the yearly interest payments to petitioner.

No principal payments have been made in the eight years since the notes were executed.

Operation of Pierre LLC

The LLC agreement vests control over Pierre LLC with its manager. Petitioner named herself the sole manager of Pierre LLC at its formation and maintained control of Pierre LLC until she appointed Mr. Reiner as her successor. Neither Jacques nor Kati has participated in the management of Pierre LLC or attended its meetings, nor do they understand its basic operation. Mr. Reiner conducts the operation of Pierre LLC, and Mr. Mesirow manages its investments.

Pierre LLC has held meetings and maintained minutes of its meetings. Mr. Reiner prepared the Pierre LLC general journal and the Pierre LLC ledger for 2000, the only documents reflecting the capital accounts of the members of Pierre LLC. Mr. Reiner recorded petitioner's initial capital contribution as $3,533,032, the cost basis of the $4.25 million of marketable securities transferred to Pierre LLC. He then credited each trust's capital account with $1,766,516, half the value of petitioner's initial capital contribution, on the date of the transfers. He wrote that these adjustments were "to reflect gift transfer by Suzanne Pierre to J. Despretz Trust and K. Despretz Trust" rather than distinguishing the gift transactions from the sale transactions (collectively, the transfers at issue). Mr. Reiner used these

documents to prepare Pierre LLC's Form 1065, U.S. Return of Partnership Income, for 2000. Some time later, he discarded the journal and the ledger.

Payment of Gift Tax Liabilities

Petitioner filed a Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for 2000 and reported the gift to each trust of the 9.5-percent Pierre LLC interest. She reported the value of the taxable gift to each trust as $256,168 (determined by multiplying a 9.5-percent interest times the $26,965 appraisal value of a 1-percent nonmanaging interest in Pierre LLC). She failed to report the gift to the K Trust as a direct skip for GST tax purposes.

Respondent's Examination and Tax Court Proceedings

Respondent examined petitioner's gift tax return and issued a deficiency notice for 2000 and 2001. Respondent determined that petitioner's gift transfers of the 9.5-percent Pierre LLC interests to the J Trust and the K Trust are properly treated as gifts of assets valued at $403,750 each, not as transfers of Pierre LLC interests. Respondent further determined that petitioner made indirect gifts of 40.5 percent of the assets of Pierre LLC to both the J Trust and the K Trust. Respondent valued each of these transfers at $629,117 after taking into account the value of the promissory notes. Respondent also determined that the transfers to the K Trust were direct skips

for GST tax purposes.  The parties agree that the adjustments made with respect to gift tax for 2001 and to GST tax for 2000 and 2001 are computational and are based upon respondent's determinations concerning the values of petitioner's 2000 gifts.

Petitioner timely filed a petition.

OPINION

I.  Introduction

The remaining issues after Pierre I concern the step transaction doctrine and discounts for lack of control and lack of marketability as they affect the fair market value for Federal gift tax purposes of petitioner's gifts to the trusts.  We first address the burden of proof, then turn to the gift tax generally. Next we discuss the step transaction doctrine to determine whether the transactions at issue should be collapsed into gifts of two 50-percent interests in Pierre LLC.  Finally, we determine the appropriate discounts for lack of control and lack of marketability.

II.  Burden of Proof

Petitioner argues that respondent bears the burden of proof on all fact issues[5] because she has produced credible evidence

_____

[5]The Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The burden of proof shifts to the Commissioner, however, with respect to a factual issue relevant to a taxpayer's liability for tax when the taxpayer introduces credible evidence with respect to the issue
(continued...)

and otherwise met the requirements of section 7491.  We may determine factual issues on the weight of the evidence, however, unless there is an evidentiary tie.  See <u>Knudsen v. Commissioner</u>, 131 T.C. 185 (2008); <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 75 (2005) (and the cases cited thereat); <u>McCorkle v. Commissioner</u>, 124 T.C. 56, 63 (2005).  We have examined the stipulated facts and the evidence presented at trial, and we find no such evidentiary tie.  Accordingly, we find it unnecessary to determine who has the burden of proof.

III. <u>The Gift Tax</u>

We now turn to gift tax.  Section 2501 imposes a tax on the transfer of property by gift.  The gift tax applies whether the gift is direct or indirect.  Sec. 2511.  Congress intended to use the term "gifts" in its most comprehensive sense.  <u>Commissioner v. Wemyss</u>, 324 U.S. 303, 306 (1945).  Accordingly, transfers of property by gift, by whatever means effected, are subject to Federal gift tax.  <u>Dickman v. Commissioner</u>, 465 U.S. 330, 334 (1984).

The Federal gift tax is imposed on the fair market value of the property transferred if a gift is made in property.  See secs. 2502 and 2503.  A gift of property is valued as of the date of the transfer.  Sec. 2512(a).  The gift is measured by the

----

[5](...continued)
and meets the other requirements of sec. 7491(a).  Sec. 7491(a)(1) and (2)(A) and (B).

value of the property passing from the donor and not necessarily by the enrichment to the donee. See sec. 25.2511-2(a), Gift Tax Regs. Where property is transferred for less than adequate and full consideration in money or money's worth, the amount of the gift is the amount by which the value of the property transferred exceeds the value of the consideration received. See sec. 2512(b).

## IV. The Step Transaction Doctrine

We now discuss whether the step transaction doctrine applies to the transfers at issue. Petitioner argues that the four transfers of her entire interest in Pierre LLC[6] each had independent business purposes to preclude the four transactions from being collapsed under the step transaction doctrine. She lists several nontax reasons for establishing Pierre LLC but no separate nontax reason for splitting the gift transfers from the sale transfers. Respondent argues that petitioner intended to transfer a 50-percent interest in Pierre LLC to each trust. She divided the transfers at issue into four transfers only to avoid gift tax. Respondent further argues that the gift and sale transactions should be collapsed and treated as disguised gifts of 50-percent interests to each trust to the extent their value exceeds the value of the trust's promissory note. Accordingly,

---

[6]Petitioner gifted a 9.5-percent interest in Pierre LLC to each trust before she sold a 40.5-percent interest to each trust in exchange for promissory notes.

respondent contends that the gifts should be valued as two 50-percent undivided interests in Pierre LLC rather than the two 9.5-percent interests petitioner reported.  We agree with respondent.

The step transaction doctrine embodies substance over form principles.  It treats a series of formally separate steps as a single transaction if the steps are in substance integrated, interdependent, and focused toward a particular result.  See Commissioner v. Clark, 489 U.S. 726, 738 (1989).  Where an interrelated series of steps is taken pursuant to a plan to achieve an intended result, the tax consequences are to be determined not by viewing each step in isolation, but by considering all of them as an integrated whole.  Holman v. Commissioner, 130 T.C. 170, 187 (2008), affd. ___ F.3d ___ (8th Cir., Apr. 7, 2010); Gross v. Commissioner, T.C. Memo. 2008-221.  The step transaction doctrine is "well-established" and "expressly sanctioned" and may be applied in the area of gift tax where intra-family transactions often occur.  See Senda v. Commissioner, 433 F.3d 1044, 1049 (8th Cir. 2006) (citing Commissioner v. Clark, supra at 738), affg. T.C. Memo. 2004-160.

It is appropriate to use the step transaction doctrine where the only reason that a single transaction was done as two or more separate transactions was to avoid gift tax.  Estate of Cidulka v. Commissioner, T.C. Memo. 1996-149 (collapsing decedent's

transfer to family members of minority interests in closely held stock with his same-day sale/redemption of his remaining stock in the corporation in exchange for a note).  We have applied the step transaction doctrine to aggregate a taxpayer's two separate same-day transfers to a partnership of undivided 50-percent interests in land to reflect the economic substance of the transaction.  See Shepherd v. Commissioner, 115 T.C. 376, 389 (2000), affd. 283 F.3d 1258 (11th Cir. 2002).  We have also collapsed a taxpayer's separate same-day steps of funding a partnership with the taxpayer's gifts of partnership interests where, at best, the transactions were integrated and, in effect, simultaneous.  Senda v. Commissioner, T.C. Memo. 2004-160, affd. 433 F.3d 1044 (8th Cir. 2006).

Whether several transactions should be considered integrated steps of a single transaction is a question of fact.  Senda v. Commissioner, 433 F.3d at 1048.  We therefore turn to the facts. The transfers at issue all occurred on the same day.  Moreover, virtually no time elapsed between the transfers.  Petitioner gave away her entire interest in Pierre LLC within the time it took for four documents to be signed.  In addition, the record indicates that petitioner intended to transfer her entire interest in Pierre LLC to the trusts without paying any gift taxes.  We find compelling that Mr. Reiner recorded the transfers at issue as two gifts of 50-percent interests in Pierre LLC in

the contemporaneous journal and ledger and that he used these records to prepare Pierre LLC's tax return. Mr. Reiner testified at trial, however, that he later discarded these records because they contained inaccuracies, including the characterization of the transfers. We do not so easily ignore Mr. Reiner's contemporaneous description of the transaction.

Petitioner intended to transfer two 50-percent interests to the trusts, but she first gifted small interests in Pierre LLC to use a portion of her then-available credit and her GST tax exemption. We find that petitioner had primarily tax-motivated reasons for structuring the gift transfers as she did. She then sold interests in Pierre LLC in exchange for the promissory notes that were significantly discounted using the 36.55-percent valuation discount. No principal payments have been made on the notes despite the passage of eight years. Further, Pierre LLC has made yearly distributions to the trusts so that the trusts could make the yearly interest payments. Consequently, she transferred $4.25 million of assets within Pierre LLC without paying any gift tax. Petitioner intended not just to minimize gift tax liability but to eliminate it entirely.

We find that nothing of tax-independent significance occurred in the moments between the gift transactions and the sale transactions. We also find that the gift transactions and the sale transactions were planned as a single transaction and

that the multiple steps were used solely for tax purposes.
Accordingly, we hold that petitioner made a gift to each trust of
a 50-percent interest in Pierre LLC to the extent the interest
exceeds the value of the promissory note executed by the trust.

V.   Valuation

We must now determine the value of a 50-percent interest in
Pierre LLC on the date of the transfers.  The value of gifted
property is determined as of the date of the gift as "the price
at which such property would change hands between a willing buyer
and a willing seller, neither being under any compulsion to buy
or to sell, and both having reasonable knowledge of relevant
facts."  Sec. 2512; sec. 25.2512-1, Gift Tax Regs.  The willing
buyer and willing seller are hypothetical persons, rather than
specific individuals or entities, and their characteristics are
not necessarily the same as those of the donor and the donee.
Holman v. Commissioner, supra at 200.  The hypothetical willing
buyer and seller are presumed to be dedicated to achieving the
maximum economic advantage.  Id.

We do not value the Pierre LLC interests by reference to the
trusts' ownership through the LLC after transfer but rather by
their value in petitioner's hands at the moment of transfer.  See
Shepherd v. Commissioner, 283 F.3d at 1262.  Ultimately, the
value we determine need not be directly traceable to specific
testimony if it is within the range of values that may be

properly derived from consideration of all the evidence.  E.g.,
Peracchio v. Commissioner, T.C. Memo. 2003-280.

The parties agree that a willing buyer would presumably pay
less for the Pierre LLC interests than for an outright purchase
of its freely transferable cash and securities because she would
have limited control of her investment under the LLC agreement.
See Estate of Petter v. Commissioner, T.C. Memo. 2009-280; Estate
of Erickson v. Commissioner, T.C. Memo. 2007-107.  For example,
the LLC agreement vests control with the manager and restricts
members' rights to transfer their interests or withdraw.[7]

Mr. Shuey determined that the fair market value of Pierre
LLC interests would be subject to a 10-percent lack of control
discount and 30-percent marketability discount, for a 36.55
cumulative discount.  Petitioner determined the percentage
interests in Pierre LLC that she should gift and sell after she
consulted with Mr. Shuey.  She then reported each gift of a 9.5-
percent Pierre LLC interest on her gift tax return at the
$256,168 discounted value.  At trial, petitioner called on expert
witness Daniel Kerrigan of Management Planning, Inc. (MPI) who
concluded that the appropriate discounts were 10 percent for lack

_____

[7]Respondent does not challenge the validity of these
restrictions for valuation purposes under the special valuation
rules of Ch. 14.  See secs. 2701-2703.

of control and 35 percent for lack of marketability, for a combined discount of 41.5 percent.[8]

Respondent did not introduce an expert report at trial because of his position that the gifts were of the underlying assets of Pierre LLC.  See Pierre v. Commissioner, 133 T.C. __ (2009).  Respondent argues, however, that the discounts for lack of control and marketability determined by petitioner's expert witness should be reduced.  We address each of these discounts in turn.

A.    Lack of Control (Minority) Discount

We begin with the lack of control discount.  A minority discount may apply where a partner lacks control as indicated by such factors as the inability to participate in management, to direct distributions, or to compel liquidation or withdraw from the partnership without the consent of the controlling interest. See Estate of Bischoff v. Commissioner, 69 T.C. 32, 49 (1977). Degree of control is the critical factor in deciding whether the lack of control discount applies and the amount of the discount, if any.  See id.

---

[8]Expert opinion sometimes aids the Court in determining valuation; other times, it does not.  See Laureys v. Commissioner, 92 T.C. 101, 129 (1989).  We may accept the opinion of an expert in its entirety, or we may be selective in the use of any portion thereof.  See Parker v. Commissioner, 86 T.C. 547, 562 (1986); Buffalo Tool & Die Mfg. Co. v. Commissioner, 74 T.C. 441, 452 (1980).

Petitioner relied on Mr. Shuey's determination that a 10-percent lack of control discount was appropriate in valuing the transfers at issue. At trial, petitioner's expert witness echoed Mr. Shuey's determination. Mr. Kerrigan reviewed the LLC agreement to see what specific rights and restrictions applied to a 40.5-percent interest and a 9.5-percent interest in Pierre LLC and concluded that a 10-percent lack of control discount applies. Respondent argues that petitioner's expert should have reviewed the rights and restrictions related to the two 50-percent blocks petitioner gifted to the trusts rather than the 9.5-percent interests petitioner reported. We agree.

Mr. Kerrigan testified that he had not valued a 50-percent Pierre LLC interest and that to do so he would continue to look to the rights and restrictions under the LLC agreement. For example, he pointed out that a 50-percent ownership interest would allow a member to block the appointment of a new manager but a minority interest would not. He therefore admitted that the discount would be modestly reduced to as low as 8 percent, and we so find.

B.   Marketability Discount

Petitioner argues that an additional marketability discount should be applied to reflect the lack of a ready market for Pierre LLC interests. Petitioner valued the Pierre LLC interests using Mr. Shuey's determination that a 30-percent marketability

discount is appropriate.  Petitioner's expert witness at trial increased the marketability discount to 35 percent.[9] Notwithstanding this increase, petitioner advocates for only the 30-percent marketability discount on which she relied.

Respondent challenges certain aspects of Mr. Kerrigan's expert report and argues that a 35-percent marketability discount is too high.[10]  Respondent failed to argue, however, that the 30-percent marketability discount petitioner actually applied in valuing a Pierre LLC interest is inappropriate.  Further, respondent offered no evidence or expert testimony concerning the

---

[9]Mr. Kerrigan examined the difference between the price investors paid for privately placed shares (restricted stocks) and actively traded shares in the same company.  We have recognized this approach to valuation for a limited liability entity that primarily serves as an investment vehicle for marketable securities.  Holman v. Commissioner, 130 T.C. 170 (2008) (12.5-percent marketability discount appropriate), affd. ___ F.3d ___ (8th Cir., Apr. 7, 2010).  Mr. Kerrigan cited 13 studies of private sales of restricted stocks from 1971 to 2002 including MPI's proprietary study of private sales of restricted stocks from 1985 to 2000.  Mr. Kerrigan relied on MPI's study, which reported a median marketability discount of 24.8 percent. Mr. Kerrigan looked to specific factors concerning the operation of Pierre LLC, as well as the terms of the LLC agreement, in reaching his conclusion that an increased marketability discount of 35 percent was appropriate.

[10]Respondent argues that the studies Mr. Kerrigan relied on show a decrease in the median private placement discount from approximately 34 percent before 1990 to as low as 13 percent after April 1997.  The parties agree that this decrease correlates with looser restrictions on unregistered securities under Securities and Exchange Commission rule 144, 17 C.F.R. sec. 230.144 (1999).  The parties disagree as to whether the decrease is relevant in valuing an interest in Pierre LLC.  Respondent provides no evidence, however, concerning the  effect of this downward trend on the valuation of a Pierre LLC interest.

value of a Pierre LLC interest.  Accordingly, we find, after reviewing the available evidence, that a 30-percent marketability discount is appropriate for these facts.

VI.  <u>Conclusion</u>

We have considered all arguments made in reaching our decision, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.